# JOHN TAYLOR DAVIES

## V.

# JOHN ARTHUR ATKINSON ET AL.

*Partnership—Payment of Individual Debts out of Firm Assets—Ratification by Acquiescence—Time—Agency—Accounting.*

1. Where a partner has applied the funds of the firm to the payment of his individual indebtedness. the other member of the firm will be held to have ratified and confirmed such payment by acquiescence, unless, when it becomes known to him, he promptly repudiates the act.

2. Where the relation of principal and agent exists, the principal must disavow the unauthorized act of his agent within a reasonable time, or his silence will be held to be a ratification. This rule applies to a partnership, each partner being an agent of the firm.

3. Upon a bill filed by one of two partners to recover from various parties moneys paid to them by the other partner out of the firm funds to settle his individual indebtedness to them, it is *held:* That the complainant's delay of about nineteen months amounts to a ratification of such payments; and that, in the absence of an accounting between the partners, it does not appear that the moneys in question are required to give the complainant his share of the firm assets.

[Opinion filed January 25, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. EGBERT JAMISON, Judge, presiding.

On the 20th day of July, 1880, John Taylor Davies of Liverpool, England, and John Arthur Atkinson of Chicago, entered into a co-partnership for the purpose of carrying on business in Chicago, under the firm name of Davies, Atkinson & Company. By articles of co-partnership executed by the parties under their hands and seals, it was provided that the business of said firm should be that of buying hogs or hog products, and curing, packing and shipping the same to J. T. Davies & Company, at Liverpool, for sale on account of the firm of Davies, Atkinson & Company, on commission; also of buying provisions on commission for shipment to the con-

Davies v. Atkinson.

tinent of Europe and elsewhere. Said articles of co-partnership further provided that Atkinson should attend to the business of the firm; that he should draw from the firm not to exceed $2,500 semi-annually, the sum so drawn to be charged against his share of the profits; that during the existence of the co-partnership Atkinson should not buy, sell, speculate with or mortgage any firm assets, except as required in the ordinary co-partnership business, and should not engage in any speculations or business ventures on his own account, outside of the business of the firm, without the consent of Davies; that for all sums of money or assets put into the business of the firm by Davies, he should be allowed interest at the rate of five per cent. per annum, payable semi-annually; that the money and assets put into the business by Davies should remain his sole property, the firm to have the use of and pay interest on the same; Davies to have the power at any time to draw out such sum or sums of money from said business as he should choose, and to loan the firm such sums of money or assets as he should think proper; that the profits of the business, after paying interest and expenses, should be apportioned, two-thirds to Davies and one-third to Atkinson; that all business should be conducted under the cognizance and by the direction of Davies, and that there should be kept perfect, just and true books of account, in which should be entered all the transactions of the firm, and to which both partners should have free access; that within thirty days from March 1st and October 1st of each year, Atkinson should render to Davies a true, just and perfect account of all the profits by them or either of them made, and all losses by them or either of them sustained, and also all payments, receipts, disbursements, and all other things by them made, received, disbursed, acted, done or suffered in said co-partnership; that the co-partnership might be terminated by Davies at any time by giving Atkinson three months' notice in writing; that at the termination of the partnership, the partners should make to each other a true, just and final account of all things relating to said business and adjust the same, and distribute the assets of the firm.

Atkinson was substantially without means, and all the money and property to be used in the business of the firm was furnished by Davies, with the exception of $50,000 belonging to Atkinson's mother, which was borrowed by the firm, and for which the partners agreed in the articles of co-partnership to pay her six per cent. interest. The firm, after its organization, carried on a very large business, Atkinson being the managing partner, Davies in the meanwhile residing in Liverpool and carrying on business there on his own account under the name of J. T. Davies & Company, and only occasionally visiting Chicago. Atkinson was a member of the Board of Trade of Chicago and made various purchases for his firm on said Board with the knowledge and approval of Davies. During all the time the business was in progress he kept no individual bank account, but was in the habit of drawing checks on the firm account, to some extent at least, for his individual debts, as well as for the debts of the firm.

In the summer of 1884 he embarked in various large speculations on said Board on his own account, without the knowledge or consent of Davies, and said speculations having resulted in large losses, he paid said losses by drawing checks on the bank account of the firm in favor of the members of the Board to whom such losses were due. The amount of the losses so paid, as is now claimed, was nearly $40,000.

After these things had occurred, Davies came to Chicago, arriving October 3, 1884. Immediately on his arrival he received a letter from Atkinson confessing his misappropriation of the moneys of the firm. Davies thereupon took into his possession a large amount of the firm assets, of the value of about $125,000, and shipped them to Liverpool and converted them into cash. On the 23d day of October, 1884, after having disposed of that amount of the firm property, he filed his bill against Atkinson alone, alleging that Atkinson, in violation of said articles of co-partnership, had fraudulently and secretly entered into various gambling transactions on said Board of Trade on his own account, and that in payment of losses sustained in said transactions he had drawn checks upon the bank account of the firm to the amount of nearly

Davies v. Atkinson.

$4),000, the respective amounts of said checks and the names of the various persons, in whose favor they were drawn, being particularly stated; that said Atkinson had fraudulently concealed said transactions from the complainant; that at the time of the misappropriation of said moneys there was nothing standing to the credit of Atkinson on the firm books, and on a settlement of the firm accounts there would be nothing due him; that he had made other fraudulent misappropriations of the moneys of the firm to a large amount; that there were various debts due to and from the firm, and that a portion of the firm property was of a perishable nature; that the complainant furnished all the capital invested in said business and that Atkinson was interested only in the profits; that Atkinson was insolvent and had abandoned the business of the firm, and that he had received out of the assets and property of the firm a large sum in excess of his due proportion of said profits. Said bill prayed for an accounting, for a receiver, for a conversion of the partnership assets into money and for a final adjustment of the partnership affairs.

A receiver was appointed in said suit, who realized out of the assets of the firm the sum of $56,913.95, and the debts proved up against the estate of said firm amounted to $106,-882.72, of which $97,818.13 consisted of a claim in favor of the Bank of Montreal, and by order of the court the money in the hands of the receiver was applied to the satisfaction of said claims.

Said Atkinson appeared and answered said bill, and afterward, on the 26th day of January, 1885, said Davies filed his petition in said suit representing that he had then lately commenced an action of account against said Atkinson in the Superior Court of *capias ad respondendum* and had caused said Atkinson to be arrested on said *capias* and held to bail, and that he was desirous of availing himself of the advantages he might derive from said proceeding by *capias* and said bail, as well as the benefit he might derive from the prosecution of said action, and praying to be permitted to elect to proceed with said action to its final termination, and that the proceedings in the matter of said bill, so far as they related to an

accounting between the complainant and said Atkinson, be stayed until the final termination of said action; and an order was thereupon entered granting the prayer of said petition and staying the accounting in the chancery suit until the determination of the suit at law.

On the 15th day of May, 1886, Davies filed an amended and supplemental bill, naming as defendants the several parties to whom Atkinson gave the checks above mentioned in payment of his losses on the Board of Trade, alleging that said checks were given by Atkinson to pay his individual debts and that said debts consisted of his losses in certain gambling transactions; that the parties to whom said checks were given received them with notice that the funds against which they were drawn belonged to the firm, and that said moneys were paid to them for Atkinson's individual debts and in fraud of the complainant's rights, and praying that said several parties be decreed to pay over to the receiver, or to the complainant, all moneys by them received belonging to said firm. Said amended and supplemental bill was taken as confessed, as against Atkinson, but the other defendants answered, denying the equity of said bill, and alleging, among other things, that said moneys were paid to them by said Atkinson with Davies' knowledge and consent, and that such payments had been ratified and confirmed by him.

On the 18th day of May, 1886, three days after the filing of the amended and supplemental bill, Davies and Atkinson settled and compromised all their differences growing out of said co-partnership without any accounting in any judicial proceeding or otherwise, and as the evidence of such compromise and settlement they executed an agreement in writing which, after reciting various considerations, contained the following stipulations:

"The undersigned, John T. Davies, does hereby waive all claims of every description he has against said John A. Atkinson in consequence of past transactions, and covenants never to take any judgment against said Atkinson thereon; but with the distinct understanding that this agreement or covenant shall not operate to release the liability of any person who has received

Davies v. Atkinson.

the money of said firm in payment of said Atkinson's individ-
ual transactions, but said Davies reserves his right against such
persons; and further, that said Davies shall be entitled to all
moneys, claims or assets due or which might be due to him or
to said firm by reason of former transactions of said John A.
Atkinson, and of his use of the money of said firm or other-
wise, and this agreement shall in no wise interfere with the
right of said Davies to sue for and recover at his own cost and
expense such money or assets in any suit now instituted or
which may hereafter be instituted for that purpose.

"And it is expressly agreed also, if deemed necessary for the
purpose of establishing the rights of said Davies to the firm
money so paid to said third parties by said Atkinson, that an
account may be taken between the undersigned in regard to
their business transactions; but said Davies hereby covenants
to pay the expense thereof, and not to collect of or enforce
against said Atkinson any claim he may or might have against
said Atkinson arising out of their business transactions in the
past, or by reason of such account, and no judgment or decree
shall be entered against said Atkinson for the payment of any
sum which may be found due from said Atkinson to said
Davies upon such account.

"And said Atkinson hereby releases said Davies from all
claim and demands of every description arising out of their said
business, and this shall be a complete settlement between the
undersigned of all matters of every description up to date; but
it is agreed that all moneys which may be collected by said
Davies or by said firm in any way connected with their firm
business shall belong to said Davies, and said Atkinson shall
have no interest therein.

"Suit No. 94,133, Davies v. Atkinson, in the Superior
Court of Cook County is to be dismissed and the bail bond dis-
charged."

No subsequent accounting was had between said parties, but
the cause afterward came on to be heard upon the amended
and supplemental bill, the answers and replications, and the
evidence taken in open court, said evidence in no way showing
the state of the accounts between said Davies and the said

Atkinson, and at such hearing a decree was rendered dismissing said bill at the complainant's costs for want of equity.   From this decree the complainant has appealed to this court.

Messrs. SMITH & PENCE, for appellant.

If a partner pay his individual debt with partnership funds, even if the individual creditor does not know that he was paid with partnership funds, the injured partner can recover back such payment.   But, in such case, the injured partner must notify such individual creditors in apt time of his claim, or his acquiescence will estop him.   Rogers v. Batchelor, 12 Pet. 221; 3 Kent Com., * p. 42, 43.

Where the individual creditor receives his pay out of partnership funds, knowing them to be such, that would be a fraud and the transaction void, and he must refund.   A subsequent positive ratification will alone relieve him of such liability.   It is a positive actual fraud where an individual creditor knowingly receives his pay from partnership funds, and no less delay than -the period of the Statute of Limitation, which is five years, will relieve him of his liability.   Story on Part., Secs. 131, 132, 133; 3 Kent, 42, 43; 1 Am. Lead Cas. 507; Rogers v. Batchelor, 12 Pet. 221; Ensworth v. Everingham, 7 Wend. 326; Brewster v. Mott, 4 Scam. 378; Gray v. Ward, 18 Ill. 32; Fifth Nat. Bank v. Hyde Park, 101 Ill. 595; Bodenham v. Hoskyns, 13 Eng. L. & Eq. 222.

The money of the firm was taken by these Board of Trade men with knowledge that it was firm money, and hence that it was a fraudulent misappropriation of such funds.   And they stand liable to the equitable action for money had and received.

A party can not assert *laches* as a defense who has himself been guilty of the fraud upon which the action is based.   Bigelow on Fraud, 446.

Mere delay, short of the Statute of Limitations, is not sufficient to bar a right.   Gibbons v. Hoag, 95 Ill. 45, 69; Hefner v. Vandolah, 57 Ill. 520.

Lapse of time will be no bar against actual fraud on the part of the person invoking.   Bigelow on Fraud, 446; Hefner v. Vandolah, 37 Ill. 520; Preston v. Mann, 25 Conn. 118.

Davies v. Atkinson.

It is essential, in order that *laches* should be a bar, that the other side should be acting in ignorance of the real condition of his title, and in the supposition that he was rightful in his own dealing. 2 Pomeroy Eq. Jur., Sec. 818, and notes; Kerr on Fraud (Am. Ed.), 133, 188; Renie v. Young, 2 DeG. & J. 136; Kinney v. Brown, 3 Ridg. 518; McCormick v. McMurtie, 4 Watts, 192.

There must be some ingredient in the transaction which would make it a fraud in the owner of the fund to insist upon his legal right. Silence will postpone only where silence is a fraud. Devereux v. Burgwyn, 4 Ired. Eq. 351; 2 Pomeroy Eq. Jur., Sec. 812.

*Laches* can only be invoked where the party claiming has been guilty of such gross negligence as to amount to a constructive fraud. Brant v. Virginia Coal Co., 93 U. S. 326; Henshau v. Bissell, 18 Wall. 255; Bigelow on Fraud, 440.

In the case of the Marine Co. v. Carver, 42 Ill. 66, the acts of ratification were positive in their character as well as by lapse of time. The lapse of time in that case was four years between the payment and the suit, while in this case it is only a year and a half. It was not simply a question of mere delay in that case. It does not appear that either the individual parties or the partnership was insolvent at the time of the transaction. The other members of the co-partnership had conversations with the individual creditors, and did not repudiate the transaction. All the acts of the parties were of a nature to ratify the transaction.

In the case at bar no conversation was had between Davies and these parties; not one word was spoken; the partnership and Atkinson were insolvent, and these defendants knew the money they received was the money of the firm, to which they had no right; they simply united with Atkinson in robbing the firm, and now attempt to keep their plunder by taking advantage of their own fraud.

The Supreme Court in the Carver case said: "We are obliged to regard the actual facts as amounting to a ratification." And that case decides nothing else, and whatever else may have been said was *obiter dicta*.

Messrs. BISBEE, AHRENS & DECKER, for John A. Atkinson et al., appellees.

These defendants stand in the attitude of *bona fide* purchasers of these checks for value, without notice.

It is the settled doctrine of our Supreme Court, and has been for many years, that the receiving of a note on account of an existing indebtedness makes the party receiving it a *bona fide* purchaser, our Supreme Court differing on this question from the courts of New York and the courts of some other States. Foy v. Blackstone, 31 Ill. 538; Russell v. Hadduck, 3 Gilm. 233.

These defendants, within the authorities of the Supreme Court of this State, are *bona fide* purchasers for value, and their defense on that ground can not be successfully attacked, unless the mere fact that Atkinson did not use the firm name in buying and selling on the Board of Trade, amounted to notice that the debt contracted in the line of the business of the firm was the debt of the individual partner.

The presumption of notice does not arise under all circumstances, even where the debt paid out of partnership funds appears in form to be the individual debt of one partner. Here the mere using of Atkinson's name in the trades, without further explanation, and the giving these checks on the firm, the whole being in the business line of the firm, of buying and selling on the Board, the whole being characterized in the evidence as in the usual course of business, can not be fairly claimed to have established a case of constructive notice. These checks were given as money. They simply served to transfer so much money at once. In their brief existence they pass from one to another and are more negotiable than promissory notes. There is every reason of commercial policy, of business necessity, why these defendants should be protected. Wiley v. Allen, 26 Ga. 563; Darlington v. Garrett, 14 Ill. App. 238; Duncan v. Clark, 2 Rich. 587; Freeman v. Ross, 15 Ga. 252; Redley et al. v. Taylor, 13 East, 175; Frankland v. McGusty, 1 Knapp. 315; Williams v. Thomas, 6 Esp. 18; Gildersleeve v. Mahoney, 5 Duer, 383; Roth v. Colvin, 32 Vt. 125; Babcock v. Stone, 3 McL. 172.

Whatever may be said as to the right of Atkinson to draw those checks, or the defendants to receive the moneys thereon, as matters stood at the time said checks were drawn, Davies, with full knowledge of the checks, their dates and amounts, and the persons on whom drawn, and for what drawn, ratified the act of Atkinson. Marine Co. v. Carver, 42 Ill. 66. See, also, Corbin v. McChesney, 26 Ill. 231; Perry v. Bult's Banks, 14 Ga. 699; Burnley v. Rice, 18 Tex. 481; McNeil v. Reynolds, 9 Ala. 313; Ferguson v. Gordon, 1 Sneed, 254; Todd v. Lorah, 75 Pa. St. 196.

The release between the parties to the firm prevented the complainant from maintaining a suit for accounting against Atkinson, and therefore stands as a bar to the right of complainant to prosecute this suit.

Mr. William Garnett, for Frank G. Logan and Frank K. Dunn, appellees.

Logan and Dunn received two checks from Atkinson, drawn by him in the name of Davies, Atkinson & Co., aggregating $3,500. Atkinson was authorized to draw $5,000 per annum from the firm funds for his own personal use. The amount received by these appellees was less than the sum of $5,000, and consequently within the authority conferred by the articles of co-partnership.

Every partner is an agent for his co-partner ; no third person is chargeable with notice of any private agreement between partners. The mere fact, if it be a fact, that he used more of the partnership funds for his own private purposes than Davies privately authorized him to use, is no notice to us of such fact, and can not deprive us of the right to rely on those acts of Atkinson which Davies authorized him to do by the articles of co-partnership. Barrett v. Russell, 45 Vt. 43; see also Bank of Rochester v. Monteath, 1 Den. 402; Ontario Bank v. Hennessey, 48 N. Y. 545.

There was no element of fraud on the part of appellees in this case. They received checks, and Atkinson had authority to draw them for his individual purposes.

There was a delay of nineteen months and four days to

bring suit, and such delay is fatal to this claim. The Supreme Court of Illinois has decided that mere delay will bar such a suit. Marine Co. v. Carver, 42 Ill. 66; Dobbs v. Halsey, 16 Johns. 39; Reynolds v. Kenyon, 43 Barb. 585; Casey v. Carver, 42 Ill. 225.

The mere fact of the use of partnership funds for the payment of individual debts of one partner, is no fraud upon the other partner, unless so intended, and this, although the party receiving the payment knew it, was partnership funds. Hurd v. Newton, 36 Mich. 35; Tyler v. Scott, 45 Vt. 261; Sadler v. Robinson's Heirs, 2 Stewart, 520.

Mr. H. S. MONROE, for James P. Sherwin, appellee.

BAILEY, J. The only relief sought by the amended and supplemental bill in this case is to recover back from various parties moneys paid to them by Atkinson, the complainant's co-partner, out of the co-partnership funds, to settle his individual indebtedness to them for losses incurred in certain dealings had between him and them on the Board of Trade of Chicago. All of said moneys were paid out by Atkinson prior to October 3, 1884, and on that day Davies, the complainant, was notified of such misappropriation of the partnership funds, and at least as early as October 23, 1884, the date of the filing the original bill, Davies was fully informed of all the facts in relation to such misappropriation, as said bill avers specifically the several sums misappropriated, the various parties to whom the same had been paid and the account upon which such payments had been made. To the original bill Atkinson alone was made a defendant, and the object of that bill was to obtain an accounting and settlement of the co-partnership affairs upon the basis of charging Atkinson, in the statement of the account, with the several sums of money so misappropriated by him. No attempt was made to reach said funds in the hands of the parties to whom they had been paid, or in any way to question the validity of such payments, so far as they were concerned, until May 15, 1886, the date of filing the amended and supplemental bill. Thus, for nearly

nineteen months after obtaining full knowledge of all the facts, Davies acquiesced in the right of the parties now sought to be charged, to hold the moneys paid to them by Atkinson, and we are of the opinion that, upon well settled principles of law, he must be deemed to have ratified and confirmed the acts of his co-partner in paying said moneys to the defendants.

The legal principles involved seem to us to be settled by the decisions of the Supreme Court in Marine Co. v. Carver, 42 Ill. 66, and Casey v. Carver, 42 Ill. 225.   In Marine Co. v. Carver, suit was brought by Carver & Company against the Marine Company, a banking institution, to recover the amount of a firm deposit which Carver, one of the co-partners, had misapplied to the payment of his individual debt to the bank. It appears that the firm, learning of said misappropriation of its funds, sent to the bank for a statement of its account, which was given, and the check by which the money had been drawn and appropriated to Carver's individual account returned to the firm.   The check was returned by Carver & Company, and after a lapse of nearly four years they, without any previous attempt to repudiate such misappropriation of the funds, brought suit to recover said money from the bank. The court, in holding that no such recovery could be had, say : " If the firm of Carver & Company had repudiated his act and returned the check, they would have thus advised the Marine Company that, in the opinion of his co-partners, Carver was unworthy of credit, and this would have induced that company to make an effort for the collection of its debt.   But the apparent acquiescence of the co-partners of Carver would indicate their own confidence in his pecuniary solvency, and thus tend to strengthen his credit with the Marine Company and lull it into a false security.   In cases of this character it is to be remembered that the duties and obligations between the members of a partnership and third persons are reciprocal. While it is true that one partner can not rightfully appropriate the partnership funds in payment of his individual indebtedness, yet it is equally true that, if he does not so appropriate them, his acts, when they come to the knowledge of the other members of the firm, should be clearly and promptly

repudiated. At least no room should be left for doubt in the minds of parties concerned as to whether the act is repudiated or ratified. Good faith requires this, for co-partners must necessarily understand the pecuniary condition of each other better than third persons can do, and if they seem to ratify an act of one of their firm, originally unauthorized, it is a declaration in his behalf that he possesses their confidence and is entitled to credit. In Casey v. Carver, the same rule is recognized. It is there said: "Had it appeared that his partners knew of the settlement, or knew or had reason to suppose that appellants were relying upon the settlement, they could not be heard to repudiate the settlement unless they have given notice that they did not sanction the settlement, at the earliest practicable period after they learned the facts. To permit them, after acquiescing in the settlement for any great length of time after notice, to repudiate it, would be a fraud on the creditor of the individual partner."

But we think the rules established by the foregoing cases may also be sustained upon well recognized principles of the law of agency, apart from considerations drawn from the peculiar relations existing between partners. Each partner is the agent of his firm, and it is a familiar rule of the law of agency that, where the relation of principal and agent exists, the principal must disavow the unauthorized act of his agent within a reasonable time, or his silence will be held to be a ratification. Thus it is laid down by Chancellor Kent, that, "When the principal is informed of what has been done he must dissent and give notice of it within a reasonable time, and if he does not his assent and ratification will be presumed." 2 Kent Com., 616. In Bredin v. Dubary, 14 Serg. & Rawle, 27, it is said by Mr. Justice Gibson: "I take it to be indisputable, that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes it his own; he is bound to disavow it the first moment the fact comes to his knowledge." Kelsey v. National Bank, 69 Pa. St. 426. "The principal must, when informed, reject within a reasonable time, or be deemed to adopt by acquiescence." Law v. Cross, 1 Black, 592. See,

also, Walker v. Walker, 7 Baxt. 260; Peck v. Ritchey, 66 Mo. 114; Western & Atlantic R. R. Co. v. McElwee, 6 Heisk. 208; Norris v. Cook, 1 Curtis C. C. 464; Story on Agency, Sec. 258; Wharton on Agency, Sec. 86.

Atkinson being not only a partner but the managing partner of the firm, was an agent having the custody, control and power to dispose of the partnership property. The partnership funds were in his hands, and he had authority to deposit them in bank, and to check them out for all purposes within the purview of the partnership business. He had no authority to check them out to pay his individual debts, and his doing so was clearly in excess of his authority and in violation of his duty as agent. But his unauthorized acts would seem to invoke an application of the same rule which obtains in case of other agents. The failure of his firm, or of the partner who was injured, to promptly repudiate his unauthorized act, must, as to third persons, be held to be a ratification.

But there is another reason equally cogent why the decree for dismissing the bill must be affirmed. No account has been stated between Davies and Atkinson, and there is, therefore, no basis in the evidence for holding that Atkinson has withdrawn from the firm, for the payment of his individual debts, anything beyond his distributive share of the firm assets. If he has not, there are no equitable reasons why his creditors should restore the moneys so paid them. No creditor of the firm is complaining, and it does not clearly appear that there was any firm indebtedness outstanding at the date of the decree. The only possible basis for a recovery by Davies from Atkinson's creditors of the moneys received by them in payment of Atkinson's individual indebtedness is, that those moneys are required in order to give Davies his share of the firm assets. What that share is, and whether anything will be due him on final settlement, can only be determined upon an accounting between him and Atkinson. The accounting in the chancery suit was stayed on Davies' own petition, he having elected to pursue his remedy at law by action of account. A settlement and compromise between him and Atkinson having been effected, the action of account was dismissed by stipulation, and

Atkinson released from all personal liability to Davies, and no further steps have been taken either at law or in chancery to obtain a statement of the account between said co-partners. An accounting was an indispensable prerequisite to the relief sought by the amended and supplemental bill, and there being no accounting, the court could not do otherwise than dismiss the bill. The decree will be affirmed.

*Decree affirmed.*