**A. L. Horner and Forest G. Gyles, trading as Horner-Gyles Grain Company, for use of Forest G. Gyles, Appellants, v. James E. Bennett et al., trading as James E. Bennett & Company, Appellees.**

**Gen. No. 30,532.**

1. PARTNERSHIP—*assignment of partnership demand in settlement of partner's individual debt, without copartner's knowledge or consent, as bar to action at law thereon in name of partnership for use of nonconsenting partner.* Where one member of a part-

nership, without the knowledge or consent of the other, made a settlement with a partnership debtor whereby a partnership demand was set off against an individual obligation of such partner, the settlement was a bar to an action in the name of the partnership for the use of the nonconsenting partner, upon such partnership demand, the remedy being in equity.

2. PARTNERSHIP—*interest of partner in partnership assets as assignable in settlement of partner's individual debt without copartner's knowledge or consent.* Under the Uniform Partnership Act, Cahill's St. ch. 106a, the interest of a partner in the partnership assets is sufficient to support an assignment of a partnership demand in satisfaction of an individual indebtedness of such partner, although made without the knowledge or consent of his copartners.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1925. Affirmed. Opinion filed June 14, 1926.

H. M. MURRAY, for appellants; D. D. DONOHUE, of counsel.

MOSES, KENNEDY, STEIN & BACHRACH, for appellees; WALTER BACHRACH and WALTER H. MOSES, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This was a suit in assumpsit begun on July 25, 1923, by Forest G. Gyles, who sued defendants, copartners, filing a declaration in assumpsit on the common counts. A bill of particulars was filed and stricken on motion of defendants.

Thereafter an amended declaration was filed in which A. L. Horner was made an additional party, and the suit was thereafter prosecuted in the name of the copartnership for the use of Forest G. Gyles.

An amended declaration was filed and an amended bill of particulars, from which it appears that suit was brought to recover the proceeds of five cars of corn shipped by the plaintiffs, doing business as the

Horner-Gyles Grain Company, from Saybrook, Illinois, the corn being consigned to the order of the Horner-Gyles Grain Company at Chicago, with directions to notify James E. Bennett & Company.

The defendants filed a plea of the general issue, and pleaded specially that the causes of action alleged in the amended declaration did not accrue to the plaintiffs within five years before the commencement of the suit.

The plaintiffs replied to the plea of the statute that the causes of action did accrue within five years, and in further special replications averred that upon the dissolution of the partnership between plaintiffs on February 24, 1919, Horner turned over to Gyles, as copartner, what purported to be all the books and records of the copartnership, but did not turn over the account sales and other memorandum of these sales of corn, and wrongfully concealed plaintiffs' cause of action until after the dissolution of the partnership. In another special replication, plaintiffs averred that the indebtedness for which suit was brought was evidenced in writing.

A demurrer to the first special replication was sustained, and a demurrer to the second replication was overruled. Defendants thereupon rejoined, denying that the evidence of the supposed indebtedness sued for was in writing.

The cause was submitted upon these issues for trial before the court without a jury. The court found in favor of the defendants and entered a judgment of *nil capiat* and for costs which the plaintiffs seek to reverse.

The facts were stipulated and are as follows:

The plaintiffs were a copartnership composed of A. L. Horner and Forest G. Gyles, engaged in the business of buying grain from farmers and shipping it to Chicago and other places. The business was located at Saybrook, Illinois. The copartnership was dis-

solved on February 24, 1919, and was at that time insolvent.

The defendants at this time were, and now are, copartners doing business as commission merchants and brokers in the purchase and sale of grain on the Chicago Board of Trade for their customers. The plaintiff copartnership of Saybrook was a regular customer of the defendants, and from time to time shipped grain consigned to the defendants at Chicago for disposition by them.

These transactions were handled on behalf of the plaintiffs, by A. L. Horner, and the method of business was that plaintiffs would ship a car of grain under bills of lading consigned to their own order and notify defendants. In most instances, drafts were attached to these bills of lading for amounts approximating the estimated net proceeds of the grain. These drafts were directed to defendants at Chicago as drawee, and were payable to the McLean County Bank of Bloomington, Illinois, or the Citizens Bank of Saybrook, Illinois. These bills of lading with these drafts attached were then deposited for collection in the banks and these banks appeared as payees of the drafts. The drafts were forwarded by the banks to their correspondents in Chicago for presentation to defendants, and defendants, upon presentation, would honor the drafts and thereby obtain possession of the bills of lading.

Defendants kept an account with plaintiffs in which were recorded the facts as to when the bills of lading were received by the defendants and when the drafts were paid. Defendants would dispose of the grain for the account of plaintiffs upon the Chicago Board of Trade, and thereupon credit the net proceeds of the sales to the account of plaintiffs upon the books of defendants, first deducting such items as taxes, freight, inspection, weighing, car condition, interest, car service and commissions.

Immediately upon the sale of the grain, defendants were accustomed to send to the plaintiffs at Saybrook, Illinois, account sales for each shipment. In this account would appear the date of the sale, the number of the car, the character of the grain, the gross proceeds of the sale and the charges against the proceeds with the net amount thereof. Customarily, shortly thereafter, defendants would send to plaintiffs at Saybrook, check of defendants for the net proceeds. The only interest of defendants in said transactions was the commission, the amount of which was fixed under the rules of the Chicago Board of Trade.

A. L. Horner, one of the plaintiffs, also carried an individual personal account with the defendants, and through them, as his brokers, purchased and sold grain on the Chicago Board of Trade. This individual personal account was carried without the knowledge of Forest G. Gyles, his copartner. On September 3, 1918, the plaintiff copartnership shipped to Chicago, consigned to their own order, a carload of corn, which was in due course received by the defendants and by them sold on the Chicago Board of Trade for a gross amount which, after the deductions of expenses and commissions, left net proceeds of $1,734.69. This amount was credited by defendants to the account of the plaintiff copartnership on its books, and an account sales of said transaction was sent to plaintiffs and received by them at Saybrook, on September 21, 1918. On September 26, 1918, defendants transferred from the account of the plaintiffs to the individual account of A. L. Horner with defendants, the net proceeds of said shipment, and on that date confirmed the transfer by sending to plaintiffs at Saybrook a debit confirmation slip showing the transfer. At the same time, they confirmed to Horner individually at Saybrook the said transfer from said account of plaintiffs to his individual account. While this was done by direction of Horner to the defendants, this direction was without the

knowledge or the consent of his plaintiff copartner, Forest G. Gyles. Other shipments were made on November 6, 1918, on November 12, 1918, on November 15, 1918, and on November 18, 1918, and the proceeds, by similar directions and under similar circumstances and lack of notice to Gyles, transferred to the individual account of A. L. Horner.

During this time, Gyles lived in Bloomington, Illinois, where he was engaged in another business on his own account, while Horner during the same time, lived in Saybrook and kept the books and records of the corporation. In the book kept by Horner for recording the shipment of grains, the entries were customarily made in ink, but the entries made with reference to these five cars were made in pencil by Horner and failed to show, with reference to each car, who the consignee was.

At the dissolution of the partnership on February 24, 1919, the books, papers and records of it were turned over to Gyles by Horner, and with these was turned over the book showing the records of the shipment of grains. Horner at that time, however, did not turn over to Gyles any of the account sales which he had received from defendants covering the transactions in controversy.

All of the account sales were kept in the office and on the premises of the plaintiff company at Saybrook, Illinois, by Horner, from the date of their receipt from the defendants to the date upon which the books and records were turned over to Gyles. At the request of the defendants, Horner came to Chicago shortly after February 24, 1919, and at that time left with the defendants and their attorneys, without the knowledge or consent of Gyles, the original account sales of these transactions. Gyles never saw the account sales of these cars of grain, or any memoranda relating to or concerning the same, except as the same are contained in the book kept for the purpose of recording the shipment of

grain. As a matter of fact, Gyles obtained actual knowledge in February, 1920, of the fact that the cars of grain in controversy were shipped to the defendants. The defendants, at the time of these transactions and transfers from the account of the copartnership to the individual account of Horner, pursuant to the directions of Horner, had no knowledge that these directions were given by Horner without the knowledge or consent of Gyles. It is admitted that at the time of its dissolution, the assets of the plaintiffs' copartnership were insufficient to pay its liabilities.

The defendants submitted propositions of law, and in conformity with these, the trial judge held that no plaintiff for the purpose of recovery in a lawsuit may rescind his own act on the ground that such act was a fraud on some other person, and that it makes no difference in the application of this principle that the party who seeks to do this sues not in his own name alone but jointly and for the use of another person who is innocent of any fraud.

The court also held as a proposition of law that no action could be maintained in the names of the copartners to recover a debt due to the firm which had been paid by set-off of the separate debt of one of the copartners with his assent and discharged by him; that a suit to recover upon a former cause of action must be brought jointly by the copartners, and if any recovery is had, both copartners must recover.

The court further held as a proposition of law that the action of the plaintiffs was barred by the statute of limitations; that the causes of action sued upon accrued more than five years before the filing of the amended declaration of the plaintiffs on June 20, 1924, and held as a proposition of law that plaintiffs could not recover in the action.

Propositions of law were submitted by the plaintiff to the effect that Horner, copartner, had no right to direct the transfer from the copartnership account to

his individual account of the proceeds of the sale of the various cars of corn in question, without the knowledge or consent of his copartner; that the transfer of the copartnership fund or property by one copartner from the partnership account to the individual account of one of the copartners was beyond the scope of the co-partnership business, and that Horner had no legal right to direct the defendants to transfer from the copartnership account to his individual account, the proceeds of the sale of the various carloads of corn in question, and apply the proceeds of the corn in pay-ment of his individual indebtedness to the defendants.

It does not appear upon what theory these proposi-tions of law were refused, but presumably because the court did not think these propositions of law appli-cable to the facts which appear in the case.

Assuming, as we do, that the plaintiff copartnership was not barred from maintaining its suit by reason of the statute of limitations (which question, in view of our conclusion on other issues, it is not necessary to decide), the controlling question in the case is whether plaintiff copartnership is precluded from maintaining this suit by reason of the fact that Horner, a necessary coplaintiff, settled the demands of plaintiffs against defendants by securing the application of the same to the discharge of individual debts due from him to the defendants. Since the action brought is one at law, the answer must be in the affirmative, and for the reason that it is well settled by the decisions of this State, of other States, and of England, that the remedy of a partner thus wronged is by a proceeding in equity, instead of a proceeding at law.

It was so held in *Jones v. Yates,* 9 Barn. & Cres. 532, decided by the court of King's Bench in 1829, and this case has been followed in the later cases of *Wallace v. Keesall,* 7 Mees. & W. 264; *Gordon v. Ellis,* 7 Mann. & Gr. 607, 135 Eng. Rep. 244, and *Richmond v. Heapy,* 1 Stark., N. P. C. 202.

The same doctrine was announced in the case of *Homer v. Wood*, 11 Cush. (65 Mass.) 62, decided in 1853. It appeared in that case that the plaintiffs were copartners, doing business under the name of Homer & Company; that Homer lived in Cambridge, and the other plaintiff in Boston; that Homer was in active charge of the business of the firm, but the other partner had at all times access to the books and occasionally examined them; that the defendants were copartners in the grocery business and furnished goods from their store to Homer for family use. Homer and the defendants settled the bill by setting off the same in payment of the bill of plaintiffs against the defendants, and Homer receipted the plaintiffs' bill in the name of the firm and gave his own note for the small balance due them after the set-off. The settlement was made by Homer without the knowledge or consent of his copartner, who did not know until after the settlement that Homer was indebted to the defendants, and who never ratified the settlement. It was in that case agreed that the settlement was made in good faith, so far as the defendants were concerned. The court of common pleas gave judgment for the defendants, and plaintiffs appealed. The court there stated that the case "presents the interesting and important question, never hitherto judicially determined in this commonwealth, whether the equity to which a defrauded partner is entitled under such circumstances, can be supported and worked out in a court of law."

The court replied that it could not be held that the action, being in form *ex contractu*, could be maintained; that the defrauded partner could not recover in his own name alone, but it was necessary that his partner, who had already received full accord and satisfaction for his debt, should join in prosecuting the action. In other words, the plaintiffs could have maintained their action, only by proving fraud in one of themselves, and this was held after a review of

all the authorities (including *Dob & Dob v. Halsey,* 16 John. [N. Y.] 34, in which case the technical difficulty of supporting a joint action by plaintiff under such circumstances was not, it seems, called to the attention of the court), that the judgment of the trial court should be affirmed.

This case was followed by the courts of Massachusetts in the later case of *Farley v. Lovell,* 103 Mass. 387, where it was held in an action by three plaintiffs as copartners to recover for partnership goods, which after the dissolution of the firm had been delivered to the defendant by one of the plaintiffs, without the knowledge of the others, in payment of his private debt, that the action could not be maintained, although it should be made to appear that the defendant had conspired with the plaintiff to defraud the other plaintiffs.

*Jones v. Yates, supra,* and *Homer v. Woods, supra,* have been followed by the Supreme Court of this State in *Church v. First Nat. Bank of Chicago,* 87 Ill. 68. It appeared in that case that four plaintiffs were in partnership engaged in buying and selling seeds in Chicago, under the firm name of the "Chicago Seed Company." The partnership deposited money in the First National Bank of Chicago, and, in the course of its business, deposited checks with it. After the fire in 1871, the business was discontinued, and one of the partners, on a check drawn by him, as superintendent of the Chicago Seed Company, drew out $1,700 of the deposit and had the sum placed to his individual credit on the books of the bank. This money he afterwards used in his private business. The partners sued the bank in assumpsit for the amount thus drawn out and appropriated and there was a judgment in favor of the defendant. The Supreme Court, through Mr. Chief Justice Scholfield, stated that the "judgment below must be affirmed, because the plaintiffs have misconceived the tribunal to which they should resort for

relief." The court further stated in substance that the payment was clearly good as against one of the plaintiffs; that he could not be heard to say that it was in fraud of the rights of his copartners, and that as to him it was complete satisfaction of the cause of action, and being complete as to him, it was in a court of law good as to his copartners; that a court of equity was alone competent to grant the relief claimed.

There is a clear distinction between a case where as here the plaintiff copartnership sued (a settlement of this sort having been made by one of the partners) and a case where the defendant in the first instance, when sued, attempts to set off an individual against a copartnership account.

The plaintiffs call our attention to the fact that by reason of the business in which they were engaged, the relationship of defendants to the plaintiff copartnership was a fiduciary one, and that by statute in this State, it is made a criminal offense for commission merchants to fail to turn over the proceeds of sales to the consignor. The *degree* of turpitude is not, as it seems to us in a case like this, material. The real difficulty is that one of the plaintiffs who sues has by his own action (or perhaps even by his own fraud) disabled himself as a matter of law from maintaining the suit. However, under the facts as stipulated it is not clear that there was any actual fraud in the transaction. It is not at all made to appear what the actual situation as between the partners was with reference to an accounting in connection with the partnership. Notwithstanding anything that appears in the stipulation, it may have been true that Gyles had already drawn out more than his share and that Horner equitably may have been entitled to pay his debt to defendants with the proceeds of the property sold.

As has been pointed out by the courts in the case of the death of one partner the right of action, if any,

would be in the survivor, so that in such a case, if it were permissible to maintain a suit of this sort under these circumstances, it might happen that the partner who had applied the assets of the firm to his individual debts, or even one who had been guilty of the worst sort of fraud in connection with a transaction of this kind, could notwithstanding maintain a suit at law for his own benefit and recover. It is apparent that it is absolutely impossible to work out the equities of such a situation by means of a common-law action, and the courts have therefore, by the great weight of authority, decided that relief in such a case must be by appeal to a court of equity which can do entire justice in the matter. The plaintiffs therefore are not without a remedy; they have simply mistaken their remedy.

The plaintiffs, however, contend that under the Uniform Partnership Act [Cahill's St. ch. 106a], a partner has no specific interest in partnership property; that he has merely the right to possession of the partnership property for partnership purposes; that he therefore cannot sell or assign without the consent of his copartners. Therefore it is said that the attempt of Horner to transfer to defendants an interest in the property of the plaintiff partnership was of no avail; that Horner at once became a trustee for the partnership and of the property so transferred, and that such a trust could not be destroyed by a transfer of the property to defendants.

It is said that the doctrine of the common law has no application to the case at bar, because that, while under the common law, the interest of a partner might be transferred to another under the provisions of the Uniform Partnership Act, a partner has no interest in the specific partnership property which he is able to convey. *Wharf v. Wharf*, 306 Ill. 79, is the only case cited, but it certainly does not sustain the contention of plaintiffs. As is stated in *Morrison v. Austin State Bank*, 213 Ill. 472, "the interest of the partners in the

firm property is neither that of joint tenants nor of tenants in common, but is *sui generis.*"

In *Abbott v. Anderson,* 265 Ill. 290, the Supreme Court said: "The theory that a partnership is a legal entity distinct from and independent of the persons composing it has never been recognized in the law of this state." That the "entity," as opposed to the "aggregate," or the "mercantile" theory of partnership, has not been adopted under the Uniform Partnership Act, see 24 Yale Law Journal 617.

An examination of the Uniform Partnership Act, Smith-Hurd's Ill. Rev. St., 1925, ch. 106½, pp. 1914-1924, fails to convince us of the merits of this contention. Section 6 [Cahill's St. ch. 106a, ¶ 6], for example, defines a partnership as "an association of two or more persons to carry on as *co-owners* a business for profit." If it had been the legislative intention to adopt the theory for which plaintiffs contend, it seems hardly probable that partners would have been defined as "co-owners" of the business.

Both upon reason and authority, we think, plaintiffs have mistaken their remedy, which is in a court of equity, not in a court of law.

The judgment is affirmed.

*Affirmed.*

JOHNSTON and McSURELY, JJ., concur.