Rice-Stix Dry Goods Company, Appellant, v. C. A. Murphy and J. H. Burnett, trading as C. A. Murphy & Company, Appellees.

Opinion
filed June 1, 1928.

FRANK E. TROBAUGH, for appellant.

ED M. SPILLER, for appellees.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Appellant sued appellees to recover for goods sold and delivered in the sum of $864.78 and interest $29.32. Appellees filed the general issue and a notice of set-off in the sum of $2,066.45, which notice was amended by reducing the claim of set-off to $1,000. A jury was waived and the court found the issues in favor of appellees and rendered a judgment in their favor and against appellant for the sum of $174.95. In their brief and argument appellees say that $866.30 of the claim sued upon by appellant was for articles within the scope of the partnership and that no defense was sought to be made thereto. The whole controversy is as to the claim made by appellees as a set-off.

For several years, appellees, C. A. Murphy and J. H. Burnett, were partners and conducted a shoe store at Marion, Illinois. The business was conducted under the name of C. A. Murphy & Company. Mr. Burnett was president of a bank in the same city and Mr. Murphy was placed in charge of the shoe store as its active manager. The shoe store and the bank were located in the same block. While there is a conflict in the evidence as to the number of hours Mr. Burnett was in the shoe store each day, yet there is no question but that he went there two or three times a day and spent some time on each occasion. According to his testimony he paid no attention whatever to the business of the partnership and apparently knew nothing about it other than that he was a partner and that the firm had a deposit account with the bank of which he was president. He says he never examined the books of the firm and never saw the bills for goods purchased by the firm.

C. A. Murphy & Company was a customer of appellant for several years. Appellant is a wholesaler of shoes, ladies wearing apparel, etc. Appellees never sold anything in their shoe store other than shoes, hosiery and such things as are usually found in a store of that character. In 1919, Murphy & Company, through Mr. Murphy and some of the clerks in the store, gave appellant twelve orders for goods not usually carried in a shoe store to the amount of about $200. In 1920, eighteen orders were given for goods amounting to about $360. In 1921, twenty-six orders were given for goods amounting to about $500. In 1922, twenty-nine orders were given for goods amounting to about $600, and in 1923, twenty orders were given for goods amounting to about $365. All of these goods were of a character not usually found in a retail shoe store. They were all paid for by C. A. Murphy & Co., in the regular course of business. During the same period a large quantity of goods usually

found in a retail shoe store were also purchased by appellees from appellant and were paid for by the firm.

In the latter part of 1923, Mr. Burnett says he learned for the first time that Mr. Murphy had been buying goods in the name of the firm that were not kept for sale in the shoe store and that thereupon he demanded that Mr. Murphy turn the keys over to him and that he should not order any more goods. At that time appellees were owing appellant the bill sought to be recovered in this case. Under their notice of set-off appellees sought to recover the various sums of money which were paid to appellant by Murphy & Company for the goods purchased in the name of the firm but which were not within the apparent scope of the business.

Appellees insist that $2,066.45 of the firm's money was paid for goods purchased by Mr. Murphy outside of the scope of the partnership business; that the goods so purchased and paid for by the firm were really purchased for Mr. Murphy and his family and were used by them. They argue that such purchases and the use of the firm's money to pay for the same were a fraud upon the partnership. The payments were made by Mr. Murphy, one of the partners. By claiming a set-off in this case appellees are in the same position as if they had sued appellant, in an action at law, to recover partnership funds which had been fraudulently paid to appellant by one of the partners. That being true, they have misconceived their remedy, if any they have. *Church v. First Nat. Bank of Chicago,* 87 Ill. 68; *Horner v. Bennett,* 241 Ill. App. 134; *Homer v. Wood,* 11 Cush. (Mass.) 62; *Jones v. Yates,* 9 Barn. & Cres. 532.

In the case at bar, it does not appear that there has ever been an accounting between Mr. Burnett and Mr. Murphy. So far as the record shows, Mr. Murphy may be entitled on an accounting of the partnership matters

to a much larger sum than is alleged to have been wrongfully paid by him to appellant. In the absence of an accounting it cannot be known whether Mr. Burnett has been injured by the payments in question. This was held to be a good defense to a bill brought by a partner against those who were paid partnership funds under somewhat similar circumstances. *Davies v. Atkinson,* 25 Ill. App. 260, aff'd 124 Ill. 474. Where the action was assumpsit, as in the case at bar, the same defense was suggested by the court. *Horner v. Bennett,* 241 Ill. App. 134–144.

It seems to us that the negligence of Mr. Burnett in looking after his interests in the firm of C. A. Murphy & Company is inexcusable. By his negligence there was a course of dealings between his firm and appellant which would naturally lead appellant to believe that it was approved by him. A partner so careless of his own interests is not entitled to relief. Mr. Burnett placed Mr. Murphy in charge of the funds and property of the partnership as active manager. By so doing he made Mr. Murphy his agent with authority to bind him in all matters within the apparent scope of the partnership. By his negligence he permitted Mr. Murphy, for a period of four years, to exceed his authority as such agent. From such a course of dealing appellant would naturally believe that the purchases and payments made by Mr. Murphy were authorized by Mr. Burnett.

It has been held that where one of two innocent persons must suffer loss by reason of the wrongful act of a third party, the one who has made it possible, by his own negligence, for the third party to commit the wrongful act must stand the loss. *Bartlett v. First Nat. Bank of Chicago,* 247 Ill. 490; *American Hominy Co. v. Millikin Nat. Bank,* 273 Fed. 550. That rule was applied where a partner sought to escape liability for a debt contracted by another partner. *Hayner v. Crow,* 79 Mo. 293.

For the reasons aforesaid, the judgment is reversed and the cause remanded with directions to the county court to render judgment in favor of appellant and against appellees for the sum of $864.78.

*Reversed and remanded with directions.*