FueeMAN, J.,
delivered the opinion of the court.
This action was brought to recover twenty-six bales of cotton shipped in 1862 by McElwee & Isbell — the last of whom is dead, and Gaut is his administrator— from Atlanta, Georgia, consigned to the firm at Athens, Tennessee.
There are four counts in the declaration. The first is for failure to deliver thirty bales of cotton at Dalton, Georgia, shipped from Atlanta; but that the said cotton was carried back from this point to Atlanta, and there detained till lost.
The second is substantially the same, varying the cause of action by alleging a contract to deliver to East Tennessee, Virginia, and Georgia Railroad, at Dalton, in a reasonable time, and a failure to deliver within a reasonable time or any other time.
The third is a count in trover, alleging conversion and wrongfully disposing of twenty-six bales of cotton, property of plaintiff, to his damage, etc.
The fourth count alleges that defendants were, common carriers, and received the cotton at Atlanta, Ga., to be carried to Athens, Tenn., it being consigned to said McElwee & Isbell at the last named place; alleges a failure to do so or to store the same away at Dalton, Ga., that being the end or terminus of the East Tennessee and Georgia Railroad that runs from Dalton to Athens, and connects at Dalton, Ga., with defendant said Western and Atlantic Road; or to deliver the same cotton to the East Tennessee and Georgia Railroad Company, to be shipped to Athens, Tenn., to *212 plaintiff; but without that authority from McElwee & Isbell, or any one authorized to act for them, the company run the cotton back to Atlanta, and so carelessly managed it that the same was lost, and plaintiff deprived of large profits, etc.
The defendant pleaded not guilty, and statute of limitations. The last plea having been demurred to, and demurrer sustained, need not be further noticed.
The facts are, that one McCrosky, the agent of McElwee & Isbell at Atlanta, shipped the cotton on the defendants’ road at Atlanta in the fall of 1862, consigned to said firm of McElwee & Isbell at Athens, Tennessee; some four or five days after this he was informed by the agent of the railroad that the cotton had been brought back to Atlanta, because Gov. Brown, of Georgia, had issued an order forbidding cotton to be shipped over the road.
The agent of the railroad told McCrosky that he must take the cotton from the depot, which he did, and stored it in a warehouse at Atlanta, where it was kept till September, 1864, when it was burned. McCrosky states that he tried several times to ship the cotton afterwards, but the railroad company refused to receive it. It is also shown that the Western and Atlantic Road shipped cotton as long as the East Tennessee and Virginia Road would receive it and forward it. The agent or book-keeper states that all cotton that was returned from Dalton was tendered to the East Tennessee Road so far as he knew. The agent of the East Tennessee and Virginia Road at Dalton states in substance that Gen. E. Kirby Smith, then in com *213 mand of this department as General of Confederate forces, issued an order restricting shipments of cotton— as may be inferred, unless under permits — and that cotton was sent back, or refused unless shipped under such permits, and that there was no warehouse at Dalton, though it seems probable that houses might-have been procured in which to store the cotton.
Several questions are raised on the refusal of his Honor the Circuit Judge to give instructions asked, for by defendant’s counsel, and on supposed errors in charges actually given to the jury.
The first point which we notice, and which has been mainly pressed on our consideration for reversal, is the refusal on request to charge that the Western and Atlantic Railroad Company was not bound to deliver the cotton beyond the lines or localities of its carriage, unless a special contract had been made to do so.
His Honor charged on this point as follows: “If the road received the cotton at Atlanta, to be by them shipped to plaintiffs at Athens, it was their duty as common carriers to ship it to them, and safely deliver it to them in a reasonable time.” He then tells the jury if cotton consigned to 'plaintiffs at Athens, and received by company to be shipped to plaintiffs, it was defendant’s duty to take it to Dalton and deliver to the East Tennessee road, to be by that road shipped or delivered to the parties, and in absence of any special contract to the contrary, if there was one, safely deliver it to the agent of the other company, and on failure to deliver to that company, by reason of being hauled back to Atlanta without authority *214 from plaintiffs or agent authorized to control the cotton, and it was lost, defendant was liable.
Assuming that the first point or paragraph of the charge above quoted was a refusal to charge as requested, we will proceed to examine the soundness of the proposition thus presented. Is a railroad company, receiving an article at its depot, consigned to, and shipped to parties beyond the terminus of its own road, unless a special contract to do so is shown, liable for failure to deliver at the point to which it is consigned? Or is it only bound by law, by reason of such receipt, to convey to the end of the company’s own line, and then ship on the other road, and does the liability of the first company cease on delivery or tender to the next connecting line?
On the question, as we have said in a previous case at this term, there is much diversity of opinion in the American courts, but none, as far as we have been able to find, in England. Upon a more careful examination of the authorities, even in America, we think it will be found that if the weight of authority in the United States is not, certainly the decided tendency of the late decisions of American courts is in favor of the English rule, and of an enlarged liability on the part of the company receiving the goods. The English rule is thus given in the leading case of Muschamp v. Lancaster and Preston Railroad Co., 8 M. & W., 721, decided in 1841, in an opinion of Lord Abinger, C. B., in Court of Exchequer: “The question,” he says, is “whether the following is a correct charge to the jury: where a common carrier takes
*215 into his care a parcel directed to a particular place, and does not by express agreement limit his responsibility to part only of the distance, it is prima facie evidence of an undertaking on his part to carry the parcel to where it is directed, although the place is beyond the limits within which he proposes to carry on his business” — and the court held, it was a correct charge. This case has been uniformly followed in England from that time till the present. See cases collected in Smith’s Leading Cases, vol. 1, part 1, p. 371. The extent of the undertaking however might be repelled by circumstances showing the contract to have been only for the length of their own line of road, as where the freight was only paid as far as the terminus of their own road, and the rest was to be collected on delivery, though the contrary has been held, in one case at least, in England.
We think the case of Garter & Hough v. Peck, 4 Sneed, 203, however, is an emphatic endorsement of the principle of the English rule, and is the proper one in all such cases. It is true in that case there was sold what is known as a through ticket, but that was only evidence of the undertaking of the party, and such undertaking might equally well be made out by other facts. What then is the fair meaning of the undertaking of the railroad company, in view of the known course of business, and the attending circumstances in any ease of shipment of goods upon one road to be transported to another point beyond its terminus? We think it can only be where no special contract is insisted on limiting *216 the undertaking, that the party receives it with the obligation to carry or have it carried to its destination, ' and that the recipient knows his own business arrangements, and relies upon the facilities possessed by him to comply with his undertaking. If he has no such means of transmission, as is demanded by the shipper, it is his business to notify him and limit his contract with him to the extent of his own capacity to fulfil it; the other party has the right to rely on the party having the means of transmitting the goods to their destination. By the fact that the goods are consigned beyond the terminus of his own line, he is notified of what the shipper desires him to undertake to do for him, and if not able or unwilling so to undertake, it is but fair that he should be required to say so, and then the extent of his liability be clearly understood.
In. looking into the American cases, it will be found that numerous cases have held as above indicated. In the case of Angle & Co. v. Mississippi Railroad, 9 Iowa, cited in American Law Register, vol. 5, Mr. Justice Woodward lays down the rule thus: “We are clearly of the opinion that where goods are delivered to a railroad company, marked to a place beyond their road, and unaccompanied by any direction but the mark, the company is bound to deliver according to the mark, although parol evidence is admissible where receipt is given to vary the contract, as it is only prima fade evidence from the receipt that they undertook to carry the whole way, and the company would be exempt if an unvarying *217 usage to deliver at the terminus of their road was proved, and knowledge of such usage brought home to the consignor.” This is a correct statement of the rule, with perhaps the qualification or explanation, that if the receipt given was not only a receipt by which the possession of the goods was acknowledged, but also contained an express contract to transport to destination, this contract would not be subject to be varied by parol proof, by reason of the fact that the simple receipt was found in the same paper; and then further, that the unvarying usage spoken of, should not only be that the road receiving was in the habit of delivering to the other road at the terminus of its own line, but that it only undertook to transport as far as its own line, and charged to shipper freight and collected it from him alone for the transportation on its own road. In other words, that the fact that the receiving road universally used the next connecting line as a means of sending the goods to their destination when sent to points beyond the terminus would not be evidence to rebut the undertaking, expressed or implied, on receipt of the goods, to carry to destination, unless it was shown that its usage was uniform only to undertake for • its own line, and it received freight only for this service from the shipper.
If the receiving road shall send the goods on to the next line, and there receive its freight from the next road, or by an arrangement with the connecting line, the freight should be collected on 'delivery, and pro rata paid to the first road, as is the custom, we believe, of perhaps all roads, the last road is the *218 agent of tlie first, and not specifically of tbe shipper, and in that case is but the means used by the first receiver of carrying out his contract to carry or transport to its destination.
As said by an English Judge, “It is better that those who undertake the carriage of parcels for their mutual benefit should arrange matters of this kind among themselves, and should be taken each to have made the others their agents.” We think this the sounder view of the question, based on the general interests of trade, and those engaged in shipping goods by this almost universal means of transportation. It would be exceedingly hard if the shipper of a small but valuable package at Boston should be compelled to trace the package from that point along all the intervening lines over which it might possibly pass in order to reach Tennessee, in order to find who was responsible to him for its loss.
It is said in argument, however, that the books of each company would show the receipt of the package. That may be, and is true no doubt; but then the books are their own, and may or' may not be. exhibited to a single shipper, or may not possibly show the truth of the case. At any rate it would not be proper that the shipper should be compelled to rely on the evidence to be furnished by the company sought to be held liable to sustain his right. On the other hand, it imposes no hardship upon the other roads, because they are in constant communication, interchange business, and the books of the road originally shipping -would show it was re *219 ceived by the other, and would be always in their possession and of ready access. Thus the inconvenience to the road would be much less than to the single shipper of a parcel, who might never have another transaction with any of the companies during his life.
All hardship apparent in the rule can be easily obviated by the railroad companies, if it is felt, by making a special contract, or giving a special receipt, and taking freight only from the shipper for their own line. They can not be allowed to have the advantage of undertaking .for their own benefit to carry to the point of destination, either expressly or by fair implication, and then escape the responsibility incident .to the undertaking when loss occurs.
We need not notice the argument made by the learned counsel in the case, that it is beyond the power 'of the company, by its charter, to make the contract to transport beyond the line of their road, as it is only authorized to build a road from its initial point to its terminus for transportation from the one point to the other. Suffice it to say that (perhaps with one or two exceptional cases that have never been followed to any extent) it is uniformly held . that they have the power to make such contract, and we think the cases thus holding are well decided and correct.
We will not go into a review of the cases. We have discussed the question only because of the argument of the able counsel, who suggested doubts as to whether the principle herein announced had been *220 decided in the case of the East Tennessee, Georgia, and Virginia Railroad Co. v. Hartsell & Rogers.
As to the request of defendants’ counsel that the court should charge the jury that a • corporation was not liable in trover, it is not seriously insisted on in argument here, as we understand it, and 'we need not examine the question.
Counsel for the railroad asked the court to charge in the third request, taken in connection .with the one preceding, on the question of a ratification of the act of McCroskey, as agent in receiving the cotton back from the road on its return to Atlanta, and that if received by the agent and destroyed after this, the road would not be liable for value of the cotton.
The court refused to charge as requested, but charged on the question that if McCroskey received the cotton, and plaintiffs assented to or ratified the act afterwards, the plaintiffs could not recover the value of the cotton, but the proof must satisfy you that he was such agent, or that his act in receiving the cotton was ratified or acquiesced in by the plaintiff.
This charge is not accurate nor full enough, in view of the requests presented. The court should have explained to the jury what acts would constitute a ratification, it being a question or conclusion of law in many cases deducible from a certain course of conduct.
He should have further told them that the plaintiffs would not be entitled to recover if they found from the proof, or were satisfied from all the facts presented in the ease, that the plaintiffs with a knowl *221 edge of what had been done by their agent, or assumed agent, had failed after reasonable time to repudiate the act of McCroskey, and this rule is especially .applicable in a case where the transaction may turn out a profit or loss, according to circumstances: 1 Am. L. Cases, 573. We do not feel that the justice of the case as presented in this record has been reached, and therefore feel bound, for the errors indicated, to reverse and remand for a new trial.