INMAN, AKERS & INMAN v. ELK COTTON MILLS.

(*Nashville.*   December Term, 1905.)

1. **CONTRACT OF SALE.** Seller may disregard notice of cancellation by purchaser.

If the purchaser of goods sold for future delivery, notify the seller, before deliverry, that he will refuse to accept the goods, the seller may, at his option, treat the notice and intention to cancel on the part of the buyer as inoperative, and await the time when the contract is to be executed, and then, upon making a tender of the goods, hold the buyer responsible for all the consequences of nonperformance.

Cases cited and approved:  Gentry v. Margolius, 110 Tenn., 674; Ault v. Dustin, 100 Tenn., 366; Barker v. Reagan, 4 Heisk., 590; Roehm v. Horst, 178 U. S., 1; Smith v. Georgia Loan, etc., Co., 113 Ga., 975; Kadish v. Young, 108 Ill., 170; Howard v. Daily, 61 N. Y., 362.

2. **SAME.** Same.  Preserves contract for benefit of both parties, when.

But in the case stated in the first headnote the seller refusing to acquiesce in the attempted cancellation by the purchaser keeps the contract alive for the benefit of both parties and therefore the seller remains subject to all his obligations and liabilities under said contract, thereby enabling the purchaser not only to complete the contract if he so desires, notwithstanding his former repudiation of it, but also to take advantage of any supervening circumstances which would justify him in declining to complete it.

See cases cited under first headnote.

3. **SAME.** Same.  Same.  Case in judgment.

Complainants agreed to sell and deliver to defendant fifty bales of cotton at a specified price and defendant before delivery

notified complainants that it would refuse to accept the cotton, but complainants declined to recognize the cancellation of the order and thereafter tendered to defendant only forty-nine bales of cotton of the kind specified in the contract. Upon defendant's refusal to accept the forty-nine bales tendered, the cotton was re-sold by complainants who filed the bill in this cause to recover the loss occasioned by the re-sale.

*Held*: The agreement by complainants to sell and deliver fifty bales was an entire contract and the defendant's notice of cancellation did not obviate the necessity of a tender of the full number of bales by complainants in order to authorize a recovery for defendant's cancellation and breach of contract.

**4. Question reserved and not decided.**

Whether a person trading in a particular market will be taken to have dealt according to a known general custom and usage of that market, whether he in fact knows of the custom and usage or not.

Cases cited: Railroad v. Naive, 112 Tenn., 239; Star Glass Co. v. Morey, 108 Mass., 570; Samuels v. Oliver, 130 Ill., 73.

FROM LINCOLN.

Appeal from the Chancery Court of Lincoln County. —WALTER S. BEARDEN, Chancellor.

CROWNOVER & CRABTREE, and GILL & HOLMAN, for Inman, Akers & Inman.

CARTER & LAMB, for Elk Cotton Mills.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

Inman v. Cotton Mills.

The complainants in this cause are partners located and doing a cotton business in Atlanta, Georgia, and the defendant is a corporation engaged in the manufacture of cotton goods at Fayetteville, in this State. The present bill is filed to recover the sum of $508.64, which it is alleged has accrued to the complainants from a breach of an executory contract for the sale and purchase of fifty bales of cotton. On the 17th of June, 1904, the defendant sent to the complainants at Atlanta the following telegram: "If at 11½ delivered here you can ship Elk Cotton Mills here fifty bales of cotton strict low middling prompt shipment"—which was replied to by the complainants in the following telegram: "We accept 11½ strict low middling delivered at Fayetteville." This contract was immediately afterwards confirmed both by telegrams and letters exchanged between the parties. The complainants, not having the cotton on hand at Atlanta, ordered the same to be shipped from Columbus and other points in Mississippi, where they seemed to have cotton depots. On June 24, 1904, they delivered twenty-one bales to the railroad for shipment to defendants; on June 25th, three bales; and on June 27th, twenty-six bales. For some unexplained reason this cotton was much delayed en route to Fayetteville. Many complaints by letter and wire were made by defendant to the complainants as to this delay; and on July 6th, the cotton not then having been received, the defendants sent to the complainants a telegram canceling their order for the fifty bales, in reply to which the

complainants sent a message which read as follows: "Fifty bales shipped out promptly. Delay if any with the railroads. We will not accept cancellation."

The defendant declining to accept the cotton. which arrived in Fayetteville on the 7th of July, the same was sold by the complainants, and the present bill is filed against the defendant to recover the loss occasioned by this resale. In their bill the complainants insist that in Georgia, as well as in other cotton States, including Tennessee, a rule had been adopted by the cotton trade several years prior to the present transaction, known among men engaged in that trade as the "South Carolina rule," which embodied a use and custom of long standing, universal and notorious among cotton dealers and purchasers within this territory, that "prompt shipment," in a contract for the sale of cotton, meant a delivery to the common carrier within fourteen days from the time of the contract, and, the delivery of this cotton having been made within that period, that whatever delay occurred thereafter resulted from the action or nonaction of the railroads so receiving it, and for this complainants were not liable. It is further insisted in the bill that the complainants, upon the defendant's final declination to take this cotton, gave notice that it would resell it on its account and that in the resale made in accordance with this notice the highest market price was obtained. The defendant answered, and averred that no such rule or use existed as was alleged by the complainants, or, if it did, averred that it was unknown

to the defendant, and therefore did not bind it. It further averred that prompt shipment in its telegram and letters meant exactly what the terms expressed—that is, immediate shipment; that the need of the cotton covered by this contract was pressing at the time of the order, as was well understood by the complainants; and that it was in this view that promptness in shipment was made a term of the contract. It further denied that it had notice from the complainants of their purpose to make a resale of this cotton.

These were the defenses made in the original answer. It developed, however, in the taking of the proof, that only forty-nine bales of cotton of the shipments made by complainants to the defendant reached Feyetteville, one bale disappearing in the course of transportation, and that only this number of bales, as a matter of fact, were tendered to the defendant, and only that number disposed of upon its resale. When this was disclosed, the answer was amended so that the Elk Cotton Mills as an additional defense averred that the complainants had breached their contract in failing to tender the fifty bales which had been contracted to the defendant.

The chancellor dismissed this bill, and the court of chancery appeals has affirmed his decree, resting the affirmance upon the fact, as found by that court, that while it was a custom of long standing and so uniform and notorious in Georgia, North Carolina, South Carolina, and other cotton States among dealers in cotton

116 Tenn.—10

as to have become embodied finally in the rule referred to above, that prompt shipment meant a shipment within fourteen days from the making of the contract, yet that this custom and rule were unknown to the defendant and to certain other mills in the State of Tennessee, and it was therefore, held that the defendant was not bound by either, and that the delay in the shipment of this cotton was a breach of the contract, which barred complainants of a recovery.

There is very considerable authority for the contention made by the complainants that this contract, having been closed in Atlanta, was a Georgia contract, and that the terms used by the defendant in its telegram of June 17th, to wit, "prompt shipment," were to be construed with regard to the well-established usage, existing there, as well as elsewhere, in the cotton States; and this, though the defendant was without knowledge of the same. In *Star Glass Co.* v. *Morey,* 108 Mass., 570, it was held that a contract made in Boston for glass to be manufactured in Philadelphia and there delivered to the carrier is governed by the customs and usages prevailing in this latter city. In *Samuels* v. *Oliver,* 130 Ill., 73, 22 N. E.. 499, the proposition is announced, as supported by many previous cases determined in that State, as well as upon the authority of Lawson on Usages, 47, 284-287, that a person dealing at a particular market will be taken to have dealt according to the known general custom and usage of that market; and this has been held to be the rule, whether he in fact knows of the cus-

tom or not. While the exact question has not been set-
tled in this State, yet there is much in the reasoning
of the court in *Railroad* v. *Naive*, 112 Tenn., 239, 79 S.
W., 124, 64 L. R. A., 443, and the authorities there cited,
which give support to the insistence of the complainants
on this point. It is not necessary, however, for us to
determine this question, as we think it clear the com-
plainants must be repelled upon another and distinct
ground. As has been seen, the complainants agreed to
sell and to deliver to the defendant, at Fayetteville, fif-
ty bales of strict low middling cotton, and the defend-
ant agreed to purchase and receive that number of bales.

A delivery of a less number was not a compliance with
this contract. So far as it affected the contract rela-
tions of the parties, a failure in the matter of one bale
was as much as a failure to deliver any greater
number of bales. The complainants sue to recover for
the breach of an entire contract, and in order to main-
tain their bill they must show a compliance or a willing-
ness to comply with it as an entirety. Failing in this
latter regard, they fail altogether. Tiedeman on Sales,
section 101; *Barker* v. *Reagan*, 4 Heisk., 590. Their
insistence that they were relieved from tendering fifty
bales by reason of the repudiation of the contract by
the defendant, under the facts found by the court of
chancery appeals, cannot avail them. If they had ac-
cepted the repudiation, or rather cancellation of the con-
tract contained in the telegram from the defendant, of
July 7th, then this failure would not have affected, oth-

er matters out of the way, their right to recovery. This, however, they failed to do. They declined positively to accept the cancellation, and thus kept the contract alive between themselves  and the defendant, and thus enabled the defendant, notwithstanding its attempted cancellation, to avail itself of any previous or subsequent breach on the part of the complainant. As is said in *Gentry* v. *Margolius,* 110 Tenn., 674, 75 S. W., 959: "It takes two to make a contract, and just as truly it takes two to do away with one, in the absence in the contract itself of a term allowing either party to retire at pleasure."

The rule of law on this subject is thus stated in 9 Cyc., p. 637: "If a promisee elects not to accept the remittance and continues to insist on the performance of the promise, as he may do, the contract remains in existence for the benefit and at the risk of both parties, and if anything occurs to discharge it from other causes the promisor may take advantage of such discharge." The following authorities are cited which support this text: *Smith* v. *Georgia Loan, etc., Co.,* 113 Ga., 975, 39 S. E., 410; *Kadish* v. *Young,* 108 Ill., 170, 43 Am. Rep., 548; *Howard* v. *Daily,* 61 N. Y., 362, 19 Am. Rep., 285. See also, *Ault* v. *Dustin,* 100 Tenn., 366, 45 S. W., 981.

In the leading case of *Roehm* v. *Horst,* 178 U. S., 1, 20 Sup. Ct., 780, 44 L. Ed., 953, in discussing the effect of an unqualified and positive refusal to perform a contract, though the performance thereof is not yet due, the supreme court of the United States quote at length

Inman v. Cotton Mills.

from the opinion of Cockburn, Chief Justice, in *Frost* v. *Knight*, L. R. 7 Exch., 111, as follows: "The law with reference to a contract to be performed at a future time, where the party bound to performance announces prior to the time his intention not to perform it, . . . may be thus stated: The promisee, if he pleases, may treat the notice and intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of nonperformance; but in that case he keeps the contract alive for the benefit of the other party as well as his own. He remains subject to all his obligations and liabilities under it, and enables the other party, not only to complete the contract, if so advised, notwithstanding his repudiation of it, but also to take advantage of any supervening circumstances which would justify him in declining to complete it. On the other hand, the promisee may, if he think proper, treat the repudiation of the other party as the wrongful putting an end to the contract and may at once bring his action as on breach of it; and in such action he will be entitled to such damages as would have arisen from the nonperformance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss."

We think, on this ground, that the complainants' bill was not maintainable, and therefore should be dismissed. The costs of the cause will be paid by the complainants.