## BAGLEY & COMPANY v. UNION-BUFFALO MILLS COMPANY.

Middle Section.   November 24, 1928.

No petition for Certiorari was filed.

J. E. Travis, of Nashville, for plaintiff in error, Bagley & Company.
W. H. Washington, of Nashville, for defendant in error, Union-Buffalo Mills Co.

CROWNOVER, J.  This action was brought by the Mill Company to recover damages for the breach of a contract entered into by the defendant Bagley & Company through its agent on September 6, 1923 for the sale of 100 bales of cotton which the defendant refused to deliver as contracted.

The defendant pleaded the general issue and insisted that its agent had no authority to sell or to close the deal without its approval and express confirmation.

The case was tried by the court, without a jury, on depositions and oral testimony, and the court was of the opinion that the contract of sale was valid and had been breached by the defendant. He therefore rendered judgment for $960 for the plaintiff. The defendant's motion for a new trial being overruled, it appealed in error and has assigned several errors, which are, in substance, that the court erred:

(1) In rendering judgment against the defendant, because there was no evidence to support a judgment.

(2) In holding that the agent had authority to bind the defendant.

(3) In admitting the declarations of the agent before the agency was proven.

(4) In holding that the general custom prevailing in the cotton brokerage business was not controlling.

The facts necessary to be stated are that sometime about the first of September, 1923 the defendant Bagley & Company employed C. L. Roberts as its agent to buy and sell cotton in the vicinity of Wilson, North Carolina, with the agreement that all business in that vicinity would be done through him, and the profits were to be divided equally. It seems that no losses were contemplated. Any business that was secured through this agent was to be reported daily to the

defendant and if considered profitable that Company would confirm the purchase or sale by telegram or letter.

On September 4, 1923 Roberts wrote to defendant Bagley & Company a letter, using the following letterhead: "C. L. Roberts, Cotton Buyers, Wilson, N. C. Representing Bagley & Company, Nashville, Tenn.," stating that it was the form of the letter from the printer and if it met with defendant's approval he would use the same in corresponding with mills in his territory. To which the defendant replied on September 10, 1923, "Relative to the stationery showing that you represent us, this is entirely satisfactory to us. We are going to live in the hope of you developing a nice business for us that will be mutually profitable."

On September 6, 1923 Roberts wired the defendant that he had an offer for 100 bales of cotton at a stated price and that he could buy on profitable basis, and inquired whether he should book the order.

The defendant, on the same day, answered by wire that "We are afraid we cannot get the cotton. If you have positive assurance that you can get the cotton advise and we will consider." It also wrote him to the same effect.

On the night of September 6, 1923 Roberts called the plaintiff, below, Mill Company by telephone and offered 100 bales at 26.58 cents and told the plaintiff that he was the agent and was making the sale for Bagley & Company of Nashville, Tennessee. The deal was closed and the cotton was to be delivered on September 10, 1928. On the same night Roberts attempted to buy 100 bales from Rogers & Company, of Norfolk, Va., through its representative, W. G. Green, at 26.31 cents, with which to fill this order, but the prices of cotton went up and that Company later refused to deliver the cotton because the sale had not been confirmed by telegram.

On the same night Roberts wrote Bagley & Company, in part as follows:

"Your wire just received. In regard to the 100 middling to Union-Buffalos I had a time limit on the offer and after not hearing from you until after eight I bought the one hundred in and confirmed to mill. Bought it from Rogers & Co's manager in Maxton, N. C., the main office is in Norfolk, Va. Sold cotton for 26.58 and bought at 26.31. Rogers guarantees weights and grades. This is a small margin but it is a profit with no risk attached so saw no reason why we should not get same.

"Will not tell you I am satisfied we can buy any cotton unless I am sure or as sure as it is possible to be in this business. But I understood Mr. Bagley to say on the train that whenever I could be reasonably sure of profit on trades that he would be willing to go through with them, the cotton is selling tonight in small quantities for seventy-five to one hundred off, however as the time of my offer was limited and I would have had to go to

a dozen different places to take it up, and guarantee weights besides, so I bought this in from a firm that is responsible even though on a small margin of profit." . . .

"Bought and sold 25 bales this week shipment, to Enterprise Mfg. Co., Ramsey, N. C. Paid 24.50 for cotton and sold for 25c F. O. B. Will send invoice and draft tomorrow when I ship cotton." . . .

"Hoping the aforementioned business meets with your approval." etc.

Upon receipt of this and other letters Bagley & Company wrote Roberts on September 10, 1923 as follows:

"Concerning Union-Buffalo business, we prefer to hold up any sales until we are sure you will be able to secure their requirements locally."

"The business that you report in your letter of the 6th is very nice indeed. We are very anxious to do our part in those things. It occurs to us in these two transactions both are handled without our having performed a function that would entitle us to participate with you. We merely mention this that you may realize we fully appreciate the work you are doing. We presume these sales will both be billed through us, that the shippers will draw on us ladings attached. In every instance as you make sales and purchases, please promptly report them to us, that we may record them in our regular way." . . .

Speaking of expenses, the letter further said:

"In other words, the earnings shown on the two transactions should be devoted to defraying expenses in looking about for some business but we do not want you to draw on us for funds that will be charged to your account individually not for the agency, greater than the earnings may show."

On the same date Bagley & Company wrote Roberts another letter stating:

"Referring again to the nice business accomplished and reported to us in your letter of the 6th, we are not sure from your letter that those sales and those purchases were made in our name, and, of course, if they were not made in our name the earnings shown are entirely yours and no part ours; if made in our name the billing and drawing will be made through Nashville and the earnings of course, will accrue on our books. We would be glad if you would adopt the system of reporting to us in detail by lettergrams at night, sales and purchases that are made in our name, if not already reported during the day to us by wire." etc. . . .

The letter then proceeds to give in detail suggestions about notifying Bagley & Company of all sales and purchases daily by letter-

grams, with a view of hedging, and ends by stating that this is more satisfactory than to have to carry the risk over until next day.

As previously stated Rogers & Company refused to deliver the cotton purchased through Green as the trade had not been confirmed by wire, and on September 11, 1923 the plaintiff notified Bagley & Company that it had purchased 100 bales of cotton from Roberts as agent for Bagley & Company, and demanded the cotton. Bagley & Company replied that the sale was not authorized and it had not confirmed the sale and that it would not assume any responsibility. On October 11, 1923 the plaintiff bought cotton for December delivery at 28c and therefore lost $960.

It was proven that there was a custom among cotton merchants, brokers and mills that all offers of purchases or sales made by an agent must be reported and confirmed by all the parties before the deal becomes effective.

On September 23rd after delivery of the cotton had been refused by Rogers & Company and by Bagley & Company, Roberts mailed all letters, telegrams and correspondence to the plaintiff and offered to assume all liability, but this was refused by the plaintiff and it insists upon holding the defendant liable, as Roberts was insolvent. Hence this action was brought with the result above stated.

It will thus be seen that the determinative proposition is one of agency. Was there any material evidence to show that Roberts was an agent with authority or apparent authority to make the sale and to close the deal without first obtaining Bagley & Company's consent, or was there material evidence to show that Bagley & Company ratified the sale? We think there was material evidence to show that he was the general agent, that he notified Bagley & Company of the sale in its name, and that it ratified the sale.

The first two assignments of error that the court erred in rendering judgment against the defendant because there was no evidence to support the judgment, and that the court erred in holding that the agent had authority to bind the defendant, are not well made, for as above set out there is material evidence that Roberts was the defendant's general agent, made the sale in the name of the defendant, and then notified the defendant of the sale, and that it ratified the sale with knowledge of the facts.

Of course authority to solicit orders or to seek a purchaser does not ordinarily imply authority to bind the principal by an absolute sale. See 2 C. J., 593, sec. 229, note 85; Kuhlman v. Hart Company, 59 S. W., 455; Advance Thresher Co. v. Hanley, 6 Hig., 420. A person is not as a rule bound by the contracts of one who assumes without authority to represent him as agent, nor by contracts made by his agent beyond the scope of his actual or apparent authority, nor by acts done in connection therewith, without authority or in excess of authority, unless the principal ratifies the same, or is estopped to

deny the agent's authority. See 2 C. J., 834, 836, sec. 515; Calhoun v. McCrory Piano Co., 168 S. W., 149; Jones v. Harris, 10 Heisk., 98; Bement v. Armstrong, 39 S. W., 899.

Defendant's witness Bagley admits and the correspondence above set out shows that Roberts was the defendant's general agent, for the purpose of buying and selling cotton in the vicinity of Wilson, North Carolina, but under the agreement he was to notify the defendant daily of the propositions of sale and purchase, and the defendant reserved the right to confirm or reject the sales or purchases at the time; but the proof shows in this instance that while the agent did not wire immediate advice about the sale of this cotton to the plaintiff, yet he on September 6, 1923 wrote in detail what he had done, and the defendant with knowledge of the whole situation ratified the sale in its two letters to the agent. Any declarations or admissions of the principal which in any way tend to establish the fact of agency, or the extent of authority, are admissible in evidence, although not known to the person dealing with the agent. 2 C. J., 941, sec. 699.

Communications between principal and agent in which the authority of the latter is expressly or impliedly admitted, are admissible in evidence. 2 C. J., 942, sec. 702. The acts of the agent known to the principal, who made no objection, are admissible. 2 C. J., 945, sec. 709. Often, agency may be established by circumstantial evidence. 2 C. J., 944, sec. 708.

Ratification is the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority so to do. Ratification is confirmation after conduct. 2 C. J., 467.

There must be an intention to ratify, but that intention is rather manifested by the principal's acts and statements than by his professions, and the circumstances may be such that the law will recognize a constructive intention to ratify when none was actually intended. See 2 C. J., 485, sec. 102; Bement v. Armstrong, supra. It is not necessary that the principal should state in express terms that he ratified the sale but it is sufficient if what he has stated or written shows that such was his intention. 2 C. J., 486, 488; Evans v. Buckner, 1 Heisk., 291.

Whatever form would have been sufficient to clothe the agent with original authority to do an act will be sufficient to constitute a ratification of such act when done without previous authority. 2 C. J., 485. Of course the validity of the ratification does not depend upon its being communicated to the purchaser. See 2 C. J., 485.

Where the agency is shown to exist the facts will be liberally construed in favor of ratification, and slight circumstances will suffice

to raise the presumption of ratification. 2 C. J., 492; Bement v. Armstrong, supra; Seago v. Martin, 6 Heisk., 308.

The principal upon learning of the unauthorized act of the agent, if he does not intend to be bound thereby must repudiate within a reasonable time, and a reasonable time is a question of fact dependent upon the circumstances of the particular case. See 2 C. J., 509, 510; 1 Michie's Tenn. Ency. Dig., 276, 277; Southern Oil Works v. Jefferson, 2 Lea, 581; Railroad v. McElwee, 6 Heisk., 208.

When once a contract of sale is ratified with full knowledge of all the facts, or if the principal was in possession of means of learning them, his ratification becomes irrevocable. See 2 C. J., 519, sec. 140; Wood v. Cooper, 2 Heisk., 450; Shurer v. Green, 3 Cold., 419, 427. And the principal becomes bound as fully as if the agent had acted upon original authority, irrespective of any limitations on the agent's authority. 2 C. J., 521, 523, sec. 144.

It results that the first and second assignments of error are not well made and must be overruled.

The third assignment of error that the court erred in admitting the declarations of the agent before the agency was proven, is not well made for two reasons; first, because the declarations complained of are not set out as required by the rules of our court; and second, it will be observed that there is no exception to the proof of the declarations, but the exception was as to the time the proof was introduced. Ordinarily the principal must first prove the fact of agency before the agent's statement can be shown against the principal. See 2 C. J., 938. But if agency is otherwise proven they become admissible and the order of proof is largely within the discretion of the trial court. See 2 C. J., 939, 940, 946; Wilcox v. Hines, 100 Tenn., 524, 45 S. W., 781. This assignment of error must be overruled.

The fourth assignment of error that the court erred in holding that the general custom prevailed in the cotton brokerage business was not controlling, is not well made. However, we think the proof that there was a custom among cotton merchants, brokers and mills that all offers of purchase or sale made by the agent must be reported and confirmed by all the parties before the deal becomes effective, and where an agent is commissioned to do any act, nothing being said as to the mode of performance, he has implied power to perform his duties in accord with any recognized usage or mode of dealing. 2 C. J., 576; Inman v. Cotton Mills, 116 Tenn., 146-147, 92 S. W., 760; Insurance Co. v. Shulman, 140 Tenn., 487-492, 205 S. W., 315. But we think that the defendant waived this custom by ratifying this sale in its two letters of September 10th; hence this assignment of error must be overruled.

It results that all the assignments of error being overruled the judgment of the lower court must be affirmed. A judgment will be en-

tered in this court against the defendant Bagley & Company for $960, and interest thereon from October 14, 1927, to the present date, together with the cost of the cause, including the cost of the appeal. The cost of the appeal is also adjudged against the sureties on the appeal bond, and executions will issue accordingly.

## OPINION ON PETITION TO REHEAR.

Plaintiff in error has filed a petition for a rehearing on the ground that this court was in error in holding that Roberts was the general agent of Bagley & Company for the purpose of buying and selling cotton, for the reason that under the custom prevailing in the cotton business, agents and brokers had no authority to enter into a binding contract until they had transmitted the proposition to the principal.

The petition raises nothing new, and we thoroughly went over this proposition in our opinion, in which we held that Bagley & Company was notified by Roberts, and it, with knowledge of the facts, ratified the sale; hence the petition to rehear is denied.

Faw, P. J., and DeWitt, J., concur.