IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 8, 2017 Session

## FRANKLIN-MURRAY DEVELOPMENT COMPANY, L. P. v. SHUMACKER THOMPSON, PC, ET AL.

### Appeal from the Circuit Court for Williamson County
No. 95790     Michael W. Binkley, Judge

_____

### No. M2015-01968-COA-R3-CV

_____

This is a legal malpractice action in which the trial court granted partial summary judgment to the defendants, a law firm and its owners, on the plaintiff's claim for lost profits and, in due course, granted summary judgment to the defendants on the remaining claims.  The underlying suit arose from a failed real estate transaction in which a judgment for $200,000 for failure to perform a contract to purchase land for development was entered against the plaintiff in this action.  The plaintiff appeals, contending that the court erred in various respects in granting the motions for summary judgment.  Upon a thorough review of the record, we affirm the judgment of the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Jeffrey A. Greene, Franklin, Tennessee, for the appellant, Franklin-Murray Development Company, L.P.

Everett L. Hixson, Jr. and Everett L. Hixson, III, Chattanooga, Tennessee, for the appellee, Shumacker & Thompson, P.C.

Jeffery V. Curry, Chattanooga, Tennessee, Pro Se.

Stephen P. Parish, Chattanooga, Tennessee, Pro Se.

W. Neil Thomas, III, Chattanooga, Tennessee, Pro Se.

Phillip E. Fleenor, Chattanooga, Tennessee, Pro Se.

**OPINION**

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

This is a legal malpractice action arising from a suit involving a failed real estate transaction (the "underlying case").  On April 19, 1994, Franklin-Murray Development Company ("FMD"), plaintiff in this case, contracted to purchase property in Williamson County from First American Trust Company ("FATC") to develop a residential subdivision.  FMD paid FATC $100,000 in earnest money, and the contract specified that FMD would pay an additional $100,000 in nonrefundable earnest money "on the first business day after the last day on which [FMD] has a right to terminate" the contract.

In July, shortly before the closing date, FMD discovered that the property was encumbered by federal estate tax lien; as a result of the discovery, the sale did not close.  FMD did not terminate the agreement in accordance with the termination provision, nor did it seek a refund of the earnest money previously paid or pay FATC the additional $100,000 in earnest money.  Rather, FMD contacted FATC regarding the possibility of setting a new closing date.  Communication between the parties regarding the contract continued through September.

The underlying case began in October of 1994 when FATC sued FMD in Williamson County Chancery Court for a declaratory judgment that the tax lien did not prevent FATC from conveying good title, as well as a judgment for $200,000 in liquidated damages for FMD's failure to perform.  FMD engaged Shumacker Thompson, P.C. ("Law Firm") to represent it in the suit.  FMD filed an answer and a counterclaim, asserting claims for breach of contract and fraud and seeking money damages, alleging that FATC intentionally concealed the tax lien and was unwilling to remove the tax lien in order to deliver marketable title to the property.  Shortly after the counter complaint was filed, FMD gave notice of a lien *lis pendens* in accordance with Tennessee Code Annotated section 20-3-101.

In due course, FATC moved to have the lien *lis pendens* removed on the ground that FMD did not include a claim for specific performance in its counterclaim.[2]  On December 12, 1994, a hearing was held on the motion, during which counsel for both FMD and FATC stated that the parties were still willing to close the sale; as a result, the motion was denied.  In the Order denying the motion, the trial court reiterated the statements counsel made at the hearing regarding the parties' willingness to close the

---

[1] In its Order granting summary judgment to Defendants, the trial court included a lengthy recitation of undisputed facts, which are summarized herein.

[2] According to FMD's First Amended Complaint in the instant suit, it did not seek specific performance because several of its investors withdrew their financial support of the transaction when the sale did not close, and thus FMD lost its ability to perform the contract.

sale. This legal malpractice action is grounded in the circumstances surrounding the assertion of the lien *lis pendens* and representations made by the Law Firm at the hearing on FATC's motion to have the lien removed.

By March of 1995, FATC had made arrangements with the IRS to remove the tax lien. On March 6, the court ordered FATC and FMD to appear in the office of the Williamson Country Clerk and Master on March 28 to close the sale. FATC appeared, but FMD failed to appear because it was not in a position to close. FATC subsequently moved for summary judgment; the court granted the motion and awarded FATC $200,000 in liquidated damages on June 7, 1995.

FMD filed the instant action in the Circuit Court for Williamson County on December 11, 1995, against the Law Firm and its owners, Jeffrey V. Curry, Phillip E. Fleenor, W. Neil Thomas, III, and Stephen P. Parrish (along with the Law Firm, collectively referred to as "Defendants"), for legal malpractice, fraud and misrepresentation, and breach of fiduciary duty. FMD sought up to $20 million in compensatory damages, prejudgment interest, punitive damages, and costs. Defendants answered, denying that they were negligent or violated the standard of care.

On January 8, 2008, Defendants moved to dismiss or, alternatively, for partial summary judgment on FMD's claim for consequential damages for lost profits. On December 11, 2009, the trial court granted partial summary judgment to Defendants. The court based its decision on the fact that FMD continued to negotiate with FATC after the alleged breach; the court held that by continuing to negotiate, FMD waived any breach. The court concluded that because FMD could not have prevailed on the breach of contract claim in the underlying case, it was estopped from asserting the claim for lost profits in the malpractice case.

On April 8, 2015, the court granted summary judgment to Defendants on the remaining claims. The trial court determined that FMD's failure to offer expert proof as to the essential element of proximate causation, which Defendants had successfully negated, was fatal to its claims. FMD moved to alter or amend the judgment, and the motion was denied on September 8, 2015. FMD appeals, stating the following issues:

> 1. Whether the trial court erred in granting summary judgment dismissing this case on grounds that the [FMD] was required to have expert proof on causation in addition to such proof on the standard of care.

> 2. Whether the trial court erred in granting partial summary judgment dismissing [FMD's] claims for lost profits on grounds of the doctrine of election of remedies and/or waiver.

3

The Defendants raise a third issue:

> 3. A potential appellant must file its notice of appeal within thirty days after entry of final judgment. But certain post-trial motions will toll this thirty-day period, including motions to alter or amend. Under Tennessee law, a motion to reconsider does not toll the thirty-day period to file a notice of appeal. FMD timely filed a motion under Rule 59, which only requested that the trial court reconsider its previous order, and after that denial, filed its notice of appeal. Did FMD timely file its notice of appeal and does this Court have subject-matter jurisdiction over this appeal?

## II.    SUBJECT MATTER JURISDICTION

We first address Defendants' argument that FMD's Motion to Alter or Amend the trial court's grant of summary judgment to Defendants should be construed as a motion to reconsider and that, because a motion to reconsider does not toll the time for filing a notice of appeal, the notice of appeal was not timely filed; therefore, Defendants' argue, this Court lacks subject matter jurisdiction.[3]

Defendants previously raised this issue in a motion to dismiss this appeal. In an Order denying that motion, we stated:

> While the May 8, 2016 motion may not have stated grounds for relief under Tenn. R. Civ. P. 59.04, the court finds the motion should be considered a Tenn. R. Civ. P. 59.04 motion to alter or amend for the purposes of extending the time for filing a notice of appeal under Tenn. R. App. P. 4(b) and Tenn. R. Civ. P. 59.01.

We decline to disturb our ruling on Defendants' motion to dismiss this appeal and accordingly find that this appeal is properly before this Court.

---

[3] The time limit for filing a notice of appeal is jurisdictional in a civil case. Tenn. R. App. P 4(a); *First Nat'l Bank of Polk Cty. v. Goss*, 912 S.W.2d 147, 148 (Tenn. Ct. App. 1995) (citing *Jefferson v. Pneumo Serv. Corp.,* 699 S.W.2d 181 (Tenn. Ct. App. 1985)). In an appeal as of right, the notice of appeal is to be filed with the clerk of this Court within 30 days of the date of entry of the judgment appealed. Tenn. R. App. P. 4(a). However, certain timely filed motions, such as a motion to alter or amend a judgment made pursuant to Tennessee Rule of Civil Procedure 59.04, toll the 30-day period, and in such cases, the 30-day period runs from the entry of the order granting or denying the motion. Tenn. R. App. P. 4(b). A motion to reconsider is not one which tolls the time for filing a notice of appeal. *Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998); Tenn. R. Civ. P. 59.01.

## III. STANDARD OF REVIEW

This case was resolved on motion for summary judgment. A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04.[4] The party seeking summary judgment "bears the burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Armoneit v. Elliot Crane Service, Inc.*, 65 S.W.3d 623, 627 (Tenn. Ct. App. 2001).

When considering motions for summary judgment where the moving party does not bear the burden of proof at trial, we apply the following standard[5]:

> [T]he moving party may make the required showing and shift the burden of production either "(1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, [477] S.W.3d [235, 264], No. W2013-00804-SC-R11-CV, at *22 (Tenn. Oct. 26, 2015). . . .
>
> If the moving party does satisfy its initial burden of production, "the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Rye*, [477 S.W.3d at 264]. The nonmoving party must demonstrate the existence of specific facts in the record that could lead a rational trier of fact to find in favor of the nonmoving party. *Id*. If adequate time for discovery has been

---

[4] Defendants' Motion for Summary Judgment was supported by the following exhibits: (1) Plaintiff's Response To Interrogatories dated March 1, 2012, Expert Witness Disclosure; (2) Defendants' Supplementary Response To Interrogatory No. 1 dated April 23, 2014 and Defendants' Second Supplementary Response To Interrogatory No. 1 dated July 9, 2014; (3) Affidavit of James W. Cameron, III, Defendants' expert witness; and (4) Excerpts from the October 30, 2014 deposition of Thomas T. Pennington, FMD's expert witness. Plaintiff filed a memorandum opposing summary judgment, supported by its response to the Statement of Undisputed Facts.

[5] Prior to October 26, 2015, for cases filed before July 1, 2011, courts applied the standard set forth in *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008). On October 26, 2015, in *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 273 (Tenn. 2015), the Supreme Court overruled *Hannan* and adopted a standard for cases filed prior to July 1, 2011, that is consistent with Federal Rule of Civil Procedure 56. Because this case was filed December 11, 1995, we apply the standard set forth in *Rye*.

provided and the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial, then the motion for summary judgment should be granted. *Id*. Thus, even where the determinative issue is ordinarily a question of fact for the jury, summary judgment is still appropriate if the evidence is uncontroverted and the facts and inferences to be drawn therefrom make it clear that reasonable persons must agree on the proper outcome or draw only one conclusion. *White v. Lawrence,* 975 S.W.2d 525, 529–30 (Tenn. 1998).

*Hall v. Gaylord Entm't Co.,* No. M2014-02221-COA-R3-CV, 2015 WL 7281784, at \*4-5 (Tenn. Ct. App. November 17, 2015) (emphasis in original) (footnotes omitted).

We review the trial court's rulings on a motion for summary judgment *de novo* with no presumption of correctness, as the resolution of the motion is a matter of law. *Rye,* 477 S.W.at 250. We view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey*, 90 S.W.3d at 695.

## IV.  ANALYSIS

### A. Summary Judgment

As an initial matter, we address FMD's argument that the trial court should have ruled on FMD's motion to exclude the testimony of James Cameron, the Law Firm's expert witness, prior to deciding Defendants' Motion for Summary Judgment.[6] FMD does not give the specific basis of its objections to the opinions other than "the opinions of Mr. Cameron are contrary to law" and does not raise the fact that the court did not rule on the motion as a specific issue for which it seeks review. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

"[Q]uestions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). An abuse of discretion occurs if a trial court causes an injustice to a party by "(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). In its brief, FMD fails to articulate any basis upon which this Court could hold that the trial court abused its discretion in either not ruling on the motion or considering

---

[6] While FMD refers to Mr. Cameron's opinions as "testimony," in the order granting summary judgment, the trial court cited Mr. Cameron's opinions as contained in his affidavit, and it is those we have reviewed.

the affidavit of Mr. Cameron. As presented in the brief filed in this appeal, FMD essentially challenges the weight to be given rather than the admissibility of Mr. Cameron's opinions. We find no basis upon the record to disregard Mr. Cameron's affidavit and will consider the opinions expressed therein in our resolution of this appeal.

We now turn to FMD's contention that the trial court erred in holding that expert proof is required on the issue of proximate causation; that to the extent expert proof is properly required, FMD provided such proof; and that "even if expert proof is required as a general rule the question of proximate causation in this case was within the common knowledge of the jury."

A plaintiff in a legal malpractice case must prove that the attorney's conduct "fell below the degree of care, skill, and diligence which is commonly possessed and exercised by attorneys practicing in the same jurisdiction."[7] *Sanjines v. Ortwein and Assoc., P.C.,* 984 S.W.2d 907, 910 (Tenn. 1998) (citing *Spalding v. Davis*, 674 S.W.2d 710, 714 (Tenn. 1984), overruled on other grounds by *Meadows v. State*, 849 S.W.2d 748, 752 (Tenn. 1993)). "In addition, the plaintiff must demonstrate a nexus between the negligence and the injury." *Id.* (citing *Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 406 (Tenn. 1991)). Specifically, a plaintiff must prove (1) that the defendant lawyer owed a duty to the plaintiff, (2) that the lawyer breached the duty, (3) that the plaintiff was damaged, (4) that the lawyer's conduct was the cause in fact of the plaintiff's damages, and (5) that the lawyer's conduct was the proximate or legal cause of the plaintiff's damages. *Gibson v. Trant,* 58 S.W.3d 103, 108 (Tenn. 2001). Additionally, the plaintiff must prove that s/he would have prevailed in the underlying action, but for the attorney's malpractice; as a result, the trial for a legal malpractice claim becomes a "trial within a trial." *Shearon v. Seaman,* 198 S.W.3d 209, 214 (Tenn. Ct. App. 2005).

As noted in *Cleckner v. Dale*, in malpractice actions in Tennessee:

Whether a lawyer's conduct meets the applicable professional standards is generally believed to be beyond the common knowledge of laypersons. Thus, except in cases involving clear and palpable negligence, most courts considering the issue have held that cases of legal malpractice cannot be decided without expert proof regarding the applicable standard of care and whether the lawyer's conduct complies with this standard.

---

[7] In *Chapman v. Bearfield*, the Supreme Court interpreted "jurisdiction" to mean the entire State of Tenenssee, not just the specific locality in which the attorney practices: "There is only one standard of care for attorneys practicing in Tennessee: a statewide standard. By extension, an expert who opines in a legal malpractice case about an attorney's adherence to our professional standard of care must be familiar with the statewide professional standard of care." 207 S.W.3d 736, 740 (Tenn. 2006).

719 S.W.2d 535, 540 (Tenn. Ct. App. 1986), *abrogated on other grounds by Chapman v. Bearfield*, 207 S.W.3d 736 (Tenn. 2006) (citations omitted).  The requirement of expert testimony includes testimony on the issue of causation. *Bursack v. Wilson*, 982 S.W.2d 341, 343 (Tenn. Ct. App. 1998).  If a defendant-attorney presents expert proof that he did not cause the plaintiff's injury, the plaintiff must counter with expert proof to the contrary to show there is a genuine issue of material fact for trial. *Strong v. Baker*, No. M2007-00339-COA-R3-CV, 2008 WL 859086, at *7 (Tenn. Ct. App. Mar. 31, 2008) (citing *Bursack,* 982 S.W.2d at 343-45).

In the Order granting summary judgment, the trial court made the following findings pertinent to this issue:

> This case concerns a sophisticated Agreement, real property negotiations, and litigation.  The negotiations were delayed because the Plaintiff and FATC disagreed on the question of whether the IRS lien prevented the closing of the transaction.  The underlying litigation that comprises the "case within a case" concerned questions of whether the Plaintiff's failure to terminate the Agreement meant that the Plaintiff breached the contract by failing to close on the transaction, whether the lien lis pendens was proper, and whether the IRS lien was an impediment to closing the transaction. Laymen are not familiar with sophisticated transactions for commercial property subject to a federal estate tax lien.  Laymen are not familiar with the question of whether a lien lis pendens preserves a prospective purchaser's rights when he has been brought to court for a declaratory judgment in a commercial property transaction that has failed to close. Furthermore, laymen are not familiar with what makes certain language in a court's order dicta or the ruling itself.  Only a sophisticated layman could answer these questions without expert testimony.  This is not a case concerning "clear and palpable negligence," such as failing to present evidence or file an appeal after a final judgment.

The undisputed evidence supports these findings; consequently, the court correctly held that expert testimony as to proximate cause was an essential element of FMD's claim of legal malpractice.

FMD argues that the affidavit of Mr. Cameron is insufficient to negate the element of proximate cause.  Specifically, FMD argues that Mr. Cameron's opinion is conclusory and contrary to Tennessee law.  We disagree with this assertion.

In a seven-page affidavit, Mr. Cameron opined at length regarding, *inter alia*, the circumstances which led to the underlying lawsuit and the strategies involved in FMD's defense and prosecution of the counterclaim, which we summarize:

8

- By the time the Law Firm was engaged to represent FMD, events such as FMD's failure to terminate the agreement with FATC in accordance with the contract, the parties' continued negotiations following FATC's alleged breach, and FMD's inability to perform its obligation under the contract, precluded FMD from successfully pursuing a claim against FATC; consequently, the statements regarding the parties' willingness to complete the sale, which the court referred to in the Order entered following the December 12, 1994, hearing, were not the cause of FMD's injury.
- The Law Firm did not cause any injury to FMD by filing the lien lis pendens; there was a legal basis for the lien; and filing the lien was consistent with the instructions and stated intent of the owners, which was for FMD to be a "spoiler" in the transaction and to keep the real property tied up as long as possible.
- To the extent the Law Firm failed to advise FMD that it could not prevail in its claim against FATC, the failure to give such advice did not cause any injury to FMD because FMD only paid the Law Firm $5,000 to pursue the claim against FATC, and whatever damages, if any, that FMD might be entitled to recover from the Law Firm must be offset by the value of the benefits that FMD received in filing its claim against FATC.
- FMD's attorney who was overseeing the litigation told FMD that the underlying claim against FATC had considerable merit, and none of the other attorneys engaged by FMD after the Law Firm was not involved in the case advised FMD otherwise.
- FMD's failure to terminate the contract following FATC's alleged breach, not the actions of the Law Firm, caused FMD's earnest money deposit to become non-refundable under the terms of the contract.

Mr. Cameron concluded that "[t]he actions, or failure to act, or advice given by the [] [L]aw [F]irm to [FMD] did not cause any damage or harm to FMD." Mr. Cameron's opinions are sufficient to negate the essential element of proximate cause and shift the burden to FMD to produce a countervailing affidavit setting forth specific facts showing a genuine issue for trial or otherwise show that defendants were not entitled to summary judgment as a matter of law.[8] Thus, the burden shifted to FMD to respond by setting forth expert proof establishing a genuine issue of fact for trial or otherwise demonstrate that summary judgment was not appropriate.

In response to the motion, FMD filed a memorandum of law opposing summary judgment and a response to the Defendant's Statement of Undisputed Facts. The only fact which FMD disputed was that "FMD's expert witness disclosures have provided no proof or suggestion of proof regarding any causal connection between any alleged actions

---

[8] Contrary to FMD's argument, Mr. Cameron's affidavit is not conclusory; rather, his opinions are based on facts found in the record, facts which are consistent with those found by the trial court in its ruling.

or inactions of Defendants and FMD's alleged injuries." In denying this statement at the trial court, and in its brief on appeal, FMD contended that, to the extent expert proof was required, it provided such proof in the Expert Witness Disclosure, which was contained in its response to interrogatories that had been propounded by the Law Firm:[9]

(1) Thomas T. Pennington . . . will provide mixed fact/expert testimony on various subject matters as follows:

(A) The legal effect of the estate tax lien at issue in this case. Mr. Pennington will testify that the estate tax lien constituted an encumbrance on title to the property to be sold and prevented the seller from conveying title to the property as required by the purchase contract. Mr. Pennington will further explain that the provision of title insurance would not cure the title defect.

(B) The ability of the seller to perform under the real estate purchase agreement at issue in this case. Mr. Pennington will testify that prior to January 18, 1995, the seller was not able to perform its obligations to deliver title as required in the purchase agreement, because it was only at that time the seller had obtained an adequate agreement to release the estate tax lien affecting the property. The conditional release agreement obtained with the IRS dated July 22, 1994, was not sufficient to remove the lien at closing because the closing contemplated by the purchase agreement would not have generated sufficient cash to meet the payment obligations of that agreement.

(C) . . .

(D) The decision to file the lien lis pendens. Mr. Pennington will testify that, in the absence of a desire on the part of the purchaser to seek specific performance and in the absence of physical improvements on the property, Tennessee law did not provide a basis for asserting a lien on the property as a "good faith improver" and the defendants violated the standard of care by advising plaintiffs to permit defendants to file the notice of lien.

---

[9] FMD's answers to the Law Firm's interrogatories were filed by the Law Firm in support of the motion. In its memorandum filed in opposition to the summary judgment motion, FMD stated:

The opinions to be offered in this case by FMD's expert witness, Thomas T. Pennington, are set forth in Plaintiff's Expert Disclosures. These opinions were confirmed by Mr. Pennington at his deposition on October 30, 2014. At that deposition, Mr. Pennington confirmed that Plaintiff's Expert Disclosures set forth fully and accurately each and every opinion to which he would testify in the instant case[.]

(E) The response to the seller's motion to remove the notice of lien. Mr. Pennington will testify that, given the filing of the notice of lien, once the seller filed its motion to remove the lien, it was a violation of the standard of care to attempt to preserve the lien at all costs by making arguments that went beyond the "good faith improver" basis on which the lien had been filed, specifically by arguing to the Court that the plaintiffs were still interested in closing on the property, which was in direct violation of instructions from the plaintiffs.

(F) The defendants' response to the Court's December 14, 1994, Order. Mr. Pennington will testify that upon receiving the Court's December 14,1994, Order, the defendants violated the standard of care in various ways: (i) by failing to recognize (or by intentionally ignoring) the dangers implicit in the Court's recitation that "counsel for both parties asserted during oral argument that they were still willing to close the contract if the other side was ready to perform all obligations" . . . (iii) by telling the plaintiffs that no corrective action need be taken because the statement in the Order was "dicta" when in fact it was essential to the ruling of the Court and therefore was not dicta; (iv) by failing to take corrective action within thirty (30) days of the order pursuant to Tenn. R. Civ. Proc. 59 or a "motion to reconsider" which although not expressly recognized by the Tennessee Rules of Civil Procedure is a common corrective motion employed by attorneys in such circumstances . . .

In his disclosures Mr. Pennington opines as to why several of the Law Firm's actions constituted legal malpractice; contrary to the conclusion of Mr. Cameron that "[t]he actions, or failure to act, or advice given by the [] [L]aw [F]irm to [FMD] did not cause any damage or harm to FMD," however, Mr. Pennington's opinions do not address the issue of proximate cause.[10] FMD's failure to contravene Mr. Cameron's unrebutted affidavit is fatal to its claim. *See Montague v. Kellum*, No. E2000-02732-COA-R3-CV,

---

[10] As noted by the Law Firm in its Memorandum in support of the motion filed in the trial court:

Mr. Cameron's affidavit tracks his opinions as stated in Defendants' Expert Disclosures. Mr. Cameron's opinions clearly establish that FMD's alleged injuries were not the result of anything Defendants allegedly did or failed to do, nor were they in any way caused by Defendants. (Cameron Aff., Intro. Para.) Furthermore, Mr. Cameron opines that even had Defendants failed to comply with the standard of care, no departure from that standard, as alleged by FMD, caused FMD to suffer any harm or incur any damages. (Cameron Aff. ¶ 2, 4 and 5) Perhaps most importantly, Mr. Cameron establishes that FMD was precluded from the pursuit of a successful claim against FATC in the Underlying Litigation well before any involvement of Defendants. Thus, no act, failure to act or advice given by Defendants to FMD could have caused any damage to FMD. (Cameron Aff. ¶1)

11

2001 WL 523364, at *4 (Tenn. Ct. App. May 17, 2001). We accordingly find that FMD has failed to show that there is a genuine issue for trial regarding proximate cause and, absent such evidence, conclude that summary judgment was properly granted.

FMD additionally argues that it asserted claims that would have succeeded even if the Defendants successfully proved that FMD would have lost the underlying action. Specifically, FMD asserts that because "defendants' malpractice caused FMD to incur significant expenses associated with actions undertaken to attempt to correct the errors of the defendants at the December 12, 1994 hearing" and "defendants committed malpractice by not advising FMD of this fact and advising FMD to accept the seller's offer to return FMD's earnest money and terminate the contract," the Law Firm's advice caused FMD to pursue hopeless litigation instead of a settlement to return earnest money. To the extent this may be a viable theory, it is predicated on a determination that the Law Firm committed legal malpractice—a determination we have held cannot be made on the record presented. Thus, this argument is without merit, and the court's grant of summary judgment was not error.

## B. Partial Summary Judgment Regarding Lost Profits

As noted previously in this opinion, the trial court granted partial summary judgment to Defendants in December 2009, based on the fact that FMD continued to negotiate with FATC after the alleged breach. The court held that by continuing to negotiate, FMD waived any breach and could not have prevailed on the breach of contract claim in the underlying case; accordingly, it was estopped from asserting the claim for lost profits in the malpractice case. The Court held:

> . . . The evidence in this case clearly establishes that there were continuing negotiations after the alleged breach by FATC. Further, the law of this state, as expressed in *Margrave*, [*v. Channabassappa*, No. 87-159-II, 1987 WL 19444, at (Tenn. Ct. App. Nov. 6, 1987)], is that where there are such continuing negotiations after a breach, each of the parties will be estopped to assert a breach of the contract based upon the failure to perform at the time for performance specified in the contract. Based upon that, the *Inman* [*Akers & Inman v. Elk Cotton Mills*, 92 S.W. 760 (Tenn. 1905)] case, and the reasoning and law of the *ESPN* [*v. Commissioner of Baseball*, 76 F. Supp.2d 383, 387-388 (S.D.N.Y. 1999)] case which the Court has found to be persuasive, the Court concludes that there is no genuine issue of fact with regard to the claim for lost profits and finds that Defendants are entitled to judgment as a matter of law dismissing the claim for lost profits.

This holding is consistent with Tennessee law and supported by the evidence.[11]

---

[11] FMD argues that the trial court "misapplied the law governing the doctrine of election of remedies" in

12

"Waiver is commonly defined as the 'voluntary relinquishment of a known right[,] established by express declarations or acts manifesting an intent not to claim the right.'" *94th Aero Squadron of Memphis, Inc. v. Memphis-Shelby Cty. Airport Auth.*, 169 S.W.3d 627, 635 (Tenn. Ct. App. 2004) (quoting *Tenn. Asphalt Co. v. Purcell Enter., Inc.*, 631 S.W.2d 439, 444 (Tenn. Ct. App. 1982)). Even though a contract may call for a time certain for performance, if the parties continue negotiations after the time certain has passed, either party is estopped to assert there was a breach of the contract for failure to perform on the original date. *Margrave v. Channabassappa*, No. 87-159-II, 1987 WL 19444, at *4 (Tenn. Ct. App. Nov. 6, 1987) (citing *Welch v. Dillon & Co.,* 7 Tenn. App. 430 (1928)). Where the parties to a contract permit the time fixed for performance to pass without performance, the time for performance becomes indefinite; therefore, one party cannot put the other party in default without notice of a reasonable time for performance. *Id.* (citations omitted).

---

granting summary judgment on its claim for lost profits. In so doing, FMD misreads the order, wherein the court states:

> The Court finds that there are no genuine issues of material fact with respect to Defendants' arguments as to election of remedies and waiver. The Court has again reviewed *ESPN v. Commissioner of Baseball*, 76 F. Supp.2d 383, 387-388 (S.D.N.Y. 1999). Although that case is not controlling authority, the Court does find the law set forth in that case to be persuasive and consistent with Tennessee law. While there are some differences between the *ESPN* case and the present case, the Court does consider ESPN in that context and specifically notes that the ESPN court rejected the so-called "reservation of rights" by the non-moving party in that case.

> The Court has also reviewed *Inman, Akers & Inman v. Elk Cotton Mills*, 116 Tenn. 141, 92 S.W. 760 ([Tenn.] 1905) and *Margrave v. Channabassappa*, 1987 Tenn. App. LEXIS 3036 (Tenn. Ct. App. Middle Section [Nov. 6, 1987]). In *Margrave*, the Court specifically held as follows:

> "Even though a contract may call for a time certain for performance, if the parties continue negotiations after the time certain has expired, either party will thereafter be estopped to assert there was a breach of the contract for failure to perform on the original date." *Welch v. Dillon & Co.*, 7 Tenn. App. 430 ([Tenn. Ct. App. Feb. 21, 1928).

> In the opinion of this Court, that holding is directly applicable to this case. Plaintiffs argue that this case does not present the situation which was present in ESPN where there was continued adherence to the contract or performance under the contract. Plaintiffs contend that the facts of this case simply present a situation in which there were settlement negotiations to resolve a prior breach of the agreement.

The foregoing shows that the court did not base the grant of summary judgment on the doctrine of election of remedies but, rather, on its finding that FMD had waived its breach of contract claim by continuing negotiations with FATC after the July 1994 closing date.

13

Citing the following evidence, FMD contends that its negotiations with FATC following the July 1994 closing date were "settlement negotiations," not "adherence to the contract":

• Direct unequivocal testimony from FMD's representative that he did not intend to waive the breach, did not waive the breach and that the continued negotiations were "an effort to find a business solution to the dispute" (R-V, 618-21: *Geringer Supp. Aff.* at ¶¶ 2-8).[12]

• A written statement from FMD's representative confirming that FMD "would use whatever means necessary to pursue our rights" (R-V, 630: 9/13/94 *Geringer letter to Kirby* at p. 1).

• A written statement from the seller acknowledging the dispute, but confirming that the seller "is nevertheless willing to discuss the possibility of a mutually agreeable resolution of this issue" (R-V, 632: 9/14/94 *Woodruff letter to Geringer*).

• FMD's express refusal to sign a termination letter and waiver requested by the seller (R-V, 620: *Geringer Supp. Aff.* at ¶ 7).

In addition to the evidence cited by FMD, there was substantial evidence that FMD continued negotiations following the closing date, moving toward the goal of purchasing the property.[13] These findings are not disputed by FMD. This evidence equally supports the determination that FMD waived its contract claim by engaging in continued negotiations.

---

[12] Robert Geringer and Don Corliss were principals and lawyers in the law firm of Corliss and Geringer and, along with Steve Moriss, were the primary organizers of FMD.

[13] Although not specifically directed toward this issue, much of this evidence was cited in the order granting summary judgment:

On August 15, 1994, the Plaintiff's general partners issued a unanimous written consent authorizing and directing them to renegotiate the terms of the contract to purchase the property from FATC and to change any terms and conditions they deemed appropriate in light of the IRS lien. On August 24, 1994, Geringer sent a facsimile transmittal to Steve Walker, a representative of FATC, in which he stated, "[i]f we are not able to close this transaction prior to mid-September, we will have to delay the closing until March 1995. Please review the following proposal, I think it has advantages for all parties."

The court proceeded to quote from several facsimile transmittals and memoranda between Mr. Geringer, Mr. Walker, Mr. Corliss, FATC representative Douglas Kirby, and FATC counsel Charles Trost, all of which affirm FMD's intention to proceed with the purchase of the property.

14

Following the discovery of the tax lien, FMD permitted the July 1994 closing date to pass without demanding performance or a refund of the earnest money, asserting its right to terminate the contract, or otherwise pursuing remedies available under the contract;[14] rather, it continued negotiations. This conduct made the time for closing indefinite. In August, FMD's general partners authorized and directed *renegotiation of the contract terms* to purchase the property from FATC, as well as "chang[ing] any terms and conditions [] deemed appropriate in light of the IRS lien" (emphasis added). FMD's representative, Robert Geringer, then contacted FATC and expressed that FMD wished to review the tax lien issue and "set a closing date." On August 24, Mr. Geringer sent a fax transmittal to FATC, stating, "If we are not able to close this transaction prior to mid-September, we will have to delay the closing until March 1995." Communication between the parties regarding the contract continued through September, and FATC filed suit in October.

The acts taken by FMD indicate its intent not to exercise its options to terminate the contract or to sue for breach; rather, FMD's actions are consistent with an intent to purchase the property and complete the development as planned. The evidence brought the case squarely within the holding of *Margrave* that, in engaging in such conduct, FMD would be estopped in the underlying case from pursuing a breach of contract claim and the claim for lost profits could not be sustained in the malpractice action. Summary judgment on the claim was proper.

## V.   CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in all respects.

---

RICHARD H. DINKINS, JUDGE

---

[14] The contract of sale included the following provision regarding remedies available for breach:

> If this Agreement has not been terminated pursuant to the provisions of this Agreement and Seller fails to satisfy a condition for Closing which it is obligated to perform or is otherwise in default under this Agreement, and, as a result, the sale contemplated hereby does not close within the time specified herein, Purchaser, at its election, may (i) avail itself of the equitable remedy of specific performance, or (ii) terminate this Agreement by written notice to Seller, whereupon, all of the Earnest Money shall be refunded to Purchaser, and the parties shall be relieved of any further obligations hereunder.